[No. D052127. Fourth Dist., Div. One. July 24, 2009.]

ABDULAHI ALI et al., Plaintiffs and Appellants, v.
U.S.A. CAB LTD. et al., Defendants and Respondents.

1334

## COUNSEL

Marks, Golia & Finch, Stephen J. Schultz, Bernard F. King III; Initiative Legal Group and H. Scott Leviant for Plaintiffs and Appellants.

Borton Petrini, Paul Kissel and Jonathan P. Geen for Defendants and Respondents.

## OPINION

**McCONNELL, P. J.**—Abdulahi Ali and Dimitar Hristov (plaintiffs), who formerly leased taxis from U.S.A. Cab Ltd., brought a putative class action against it and its principals, Alfredo Hueso and Jose Antonio Hueso (collectively USA Cab), alleging USA Cab's leases wrongfully classified lessees as independent contractors rather than employees, and USA Cab violated the law by not providing lessees with workers' compensation insurance, not paying them minimum wages, requiring them to pay security deposits and other fees, and denying them meal and rest breaks, or alternatively, paying them premium pay. Plaintiffs contend the trial court improperly denied their motion for certification of a class. They assert the court impermissibly weighed the merits of the lawsuit, applied improper legal criteria and made erroneous legal assumptions, and made unsupported findings about the lack of predominance of common questions of law and superiority of class treatment. "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification." (*Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 654 [243 Cal.Rptr. 815].) We find no abuse of discretion and affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Complaint*

USA Cab owns a fleet of about 45 taxis that it leases out, and it operates a taxi dispatch service. Ali leased one of its taxis between July 2002 and

November 2004, and in May 2006 he filed a putative class action against it. The first amended complaint (hereafter complaint) sought the designation of a class consisting of "all current and former taxicab drivers who drove a USA Cab taxicab under a 'lease agreement' in San Diego County, during the period May 9, 2002 to the present." It alleges there are more than 100 class members.

According to the complaint, the class members were USA Cab's employees, but as a condition of employment the company required them to sign lease agreements that designated them as independent contractors. USA Cab allegedly exercised "pervasive and significant" control over putative class members' conduct, indicative of an employment relationship. For instance, USA Cab allegedly provided all the tools of the job, and drivers provided no "significant tools or instrumentalities of their own"; instructed them through its radio dispatch service as to when and where to pick up customers; instructed them on service, courtesy, personal appearance and cleanliness of the taxis; controlled the prices they could charge; required them to use USA Cab's credit card system and pay a processing fee of up to 6 percent; and prohibited them from choosing other drivers to "cover shifts they are unable to work." The complaint also alleges the lessees assumed no entrepreneurial risk in connection with their leases.

The complaint contains eight counts arising from USA Cab's alleged violation of various Labor Code provisions and Industrial Welfare Commission (IWC) wage orders pertaining to employees: imposition of unlawful fees, such as security deposits and a 6 percent charge on credit cards USA Cab processed, for the " 'privilege' " of being employed (first); failure to pay minimum wages (second); failure to provide meal and rest breaks, or alternatively, pay premium pay (third and fourth); violation of California's unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) (fifth); conversion (sixth); and negligence (eighth). The seventh count is for penalties under Labor Code section 2699 based on the alleged violations of the Labor Code and IWC wage orders.

## B. Motion for Class Certification

In February 2007 Ali moved for class certification. He submitted a copy of USA Cab's standardized lease agreement, which stated the lessee was an independent contractor and not covered by workers' compensation insurance; USA Cab would provide the lessee with a taxi "painted with [its] insignia and equipped with meter, radio, and any other equipment as required by state law and local ordinances relating to taxicabs"; USA Cab was to pay for all licenses, taxes and fees assessed on the taxi, and to furnish liability insurance, oil, tires, and maintenance, except that required by the lessee's misuse or

abuse of the taxi; the lessee was required to pay a security deposit and pay for gasoline, and was prohibited from subleasing the taxi to another person. The lease allowed the lessee to select from specified daily, weekly or monthly lease rates depending on his or her driving record.

Additionally, the lease states the lessee was not required to account to USA Cab for the amount of fares collected from passengers, or to share fares with the company; the lessee was not "restricted in any manner as to the area in which he may operate said rented taxicab, except he can only pick up fares within the city limits of San Diego, or county areas of San Diego County," and the lessee "shall not be required to remain at any specified place or assigned to any fixed hours, or mandatorily answer calls on the existing radio frequency." Further, the lease was renewable on a weekly basis, and USA Cab could cancel it on the lessee's failure to pay the lease fee or other material breach of the lease, the suspension or revocation of the lessee's driver's license or other required permits or identifications, the lessee's failure to meet insurance criteria, and the lessee's sublease of the taxi to an unapproved, uninsured driver.

Ali also submitted a copy of the training manual USA Cab provided its lessees. The manual required a driver to be "prepared with their sheriff's Id card, drivers license, map book, flashlight, trip log, and something to write with," and to have his or her taxi clean and gassed up. Further, the manual instructs a driver on how to accept radio dispatched calls by "peg[ging] into zone." It states that "[o]nce you call requesting to be placed in zone, the dispatcher will give driver pegged position, such as, first or second zone. If the driver leaves the area with a customer, or other personal business he must peg out of the zone. Failure to peg out of the zone may result in radio dispatch privileges be[ing] suspended for remainder of shift." The manual also sets forth a five-step procedure to be followed when a driver arrives at the customer's address, prohibits the driver from refusing any fare unless the customer cannot pay or "is rude an[d] abusive," and instructs a driver on customer service and dealing with rude customers.

The manual also includes various rules and regulations of the federal and state governments, the City of San Diego and the Metropolitan Transit Development Board (MTDB) applicable to taxi drivers. For instance, under MTDB rules a driver must maintain a daily trip log and assist customers with baggage, and may not solicit customers, refuse a fare, or be more than 12 feet from the taxi when in a taxi zone.

C. *Opposition to Motion*

In its opposition to the motion, USA Cab argued the purported class would be unmanageable, and common questions do not predominate over individual

issues, given differences among lessees' situations. USA Cab objected to the designation of Ali as a class representative on the ground his claims are atypical and there are conflicts between him and other purported class members.

USA Cab presented declarations by 20 putative class members, 19 of whom were current lessees and one of whom was a prior lessee. The declarations showed variations in declarants' actual conduct, and that their conduct tended to undercut complaint allegations of USA Cab's pervasive control. For instance, all declarations stated the declarants set their own work schedules. Some declarants independently advertised or promoted their services on Web sites and in phonebooks, and by giving out business cards and their personal cell phone numbers; provided some of their own work tools, such as map books, cell phones, flashlights, computers and credit card machines; set their own rates, such as flat rates per trip or rates below the standard metered rate; did not accept USA Cab's credit card system; obtained fares from sources other than USA Cab's dispatch service; refused fares at their discretion; had other drivers fill in for them, or filled in for other drivers; and used their taxis for personal reasons. The declarations uniformly stated the declarants believed they were independent contractors rather than employees of USA Cab, and they preferred the freedom, flexibility and greater earning potential of that arrangement.

The declarations also tended to show a lack of classwide damage. For instance, most declarations stated the declarants incurred no work-related injuries; customarily took meal and rest breaks; and earned net income equaling or exceeding minimum wages.

Additionally, USA Cab submitted excerpts from Ali's deposition transcript. He testified he went into the taxi business primarily to own a business, be his own boss and be "independent." Further, owning his own business gave him flexibility to care for his children by taking them to and from school. He understood there was a risk involved in owning his own business. Ali conceded that while driving a taxi for USA Cab, he took a lunch break every day for 30 to 60 minutes, and took 15-minute breaks several times a day. Further, USA Cab did not require him to take any particular fare. Rather, it would merely ask if he was available to do so. Also, USA Cab did not specify his hours or days of work, and "said work . . . how many hours you want to work."

Ali also testified he never read USA Cab's training manual and he had no idea what it said. Before entering into a lease with USA Cab, Ali leased a taxi from Ivory Cab. Ivory Cab required Ali to attend a training session at MTDB where he learned its rules on such things as how to treat customers, maintain

the taxi, keep records of trips and respond to emergencies, and that drivers are not allowed to reject small fares. Not having read USA Cab's training manual, Ali could not say whether the information in it differed from MTDB's rules.

Ali also testified he kept no financial records and could not ascertain how much he earned while driving the USA Cab taxi. USA Cab also submitted certain of Ali's responses to special interrogatories, in which he denied sustaining any work-related injury.

Further, USA Cab submitted the declaration of defendant Alfredo Hueso, who manages the company's day-to-day operations. The declaration stated USA Cab "has always been willing to discuss potential modifications and/or additions to a lease agreement," and at least once since May 2002 it added language to a lease at a driver's request. Further, USA Cab does not require drivers to subscribe to its dispatch service; it does not collect any commission or percentage of drivers' fares, and it does not require them to make any accounting to USA Cab, although MTDB requires them to include fare amounts in their daily records; it does not assign shifts to drivers or tell them whether or when to take breaks, how to obtain fares or what to charge; and drivers decide individually whether to accept payment by credit card. The declaration also states the purpose of USA Cab's training manual is to "remind [drivers] of the rules enacted/enforced by . . . MTDB and other third-party agencies such as the San Diego County Regional Airport Authority." The declaration went on to explain MTDB's rules, as included in the training manual.

D. *Tentative Ruling*

On April 27, 2007, the court issued a tentative ruling denying the class certification motion. The court determined Ali did not meet his burden of showing a predominance of common issues of fact and law and it did not appear a class action was a superior method of trying the case, given the number of declarations by purported class members that indicated USA Cab lacked the requisite control to make them employees rather than independent contractors and that tended to show a lack of classwide damages. The court found a class action unmanageable because individual testimony from putative class members was required. It also found Ali's claims were not typical of those of putative class members.

At the hearing, however, the court granted Ali's request for a continuance to depose the putative class members who submitted declarations, in an effort to attack their credibility. The court continued the hearing to May 25, and set

a schedule for supplemental briefing. The court had previously set a hearing for May 25 on Ali's motion to amend the complaint to add Hristov as a named plaintiff.

## E. Supplemental Briefing

In his supplemental brief, Ali advised the court he had deposed nine of the 20 purported class members who had supplied declarations. He did not submit any evidence that indicated they contradicted their declarations or were untruthful. Rather, he merely cited the testimony of six of the class members that they never charged *more* than the metered rate set by USA Cab. Ali, however, conceded that doing so would violate a city ordinance.

In support of its supplemental brief, USA Cab submitted deposition transcripts of the purported class members Ali deposed to show the company did not coerce them into making the declarations, and that they confirmed the statements in the declarations.

The court continued the matter to August 3, 2007, along with Ali's motion to amend the complaint to add Hristov as a plaintiff. In July, without leave of court, Ali filed declarations by Hristov and two additional drivers for USA Cab, which set forth individualized claims. Hristov's declaration stated he drove a USA Cab taxi for more than a year, there were many times he did not make enough to cover his lease payments, the company did not provide or advise him of entitlement to meal and rest breaks, he was required to take customers from a company called California Paratransit Services, Inc. (CPS), and he was not allowed to have a replacement driver. Hristov also accused USA Cab of discrimination, but did not specify the type.

Jama Yacub's declaration stated he drove a USA Cab taxi for three months in 2005, he frequently did not earn enough to cover his lease payments, he was required to take customers from CPS, and he was not allowed to select a replacement driver for his taxi. The declaration essentially claimed USA Cab discriminated against him because he is a Muslim and is unavailable to drive on Fridays when he attends prayer services. Christopher Hawkins's declaration stated he drove a USA Cab taxi for a few years, and he was required to accept at least 20 calls per month from its dispatch service. It also stated USA Cab took his taxi from outside his residence and sold it.

## F. Leave to Amend

On August 3, 2007, the court granted Ali leave to amend to add Hristov as a plaintiff. The court continued the class certification motion for yet more discovery, set a hearing for October 5, and scheduled supplemental briefing.

G. *More Supplemental Briefing*

In support of its supplemental brief, USA Cab submitted declarations of 16 additional purported class members.[1] The new declarations are substantially similar to the original 20 declarations.

USA Cab also submitted excerpts from the transcript of Hristov's deposition. He testified he leased a taxi from Yellow Cab during three periods between 1993 or 1994 and 2005, totaling about 10 years, and he was designated as an independent contractor. In 2005 he spoke with the law firm that represents Ali in this action about joining a lawsuit it was pursuing against Yellow Cab for violating the same types of labor claims alleged here. Nonetheless, Hristov later entered into a lease with USA Cab, with the understanding he would be an independent contractor and not receive employee benefits, and without trying to negotiate any different lease terms. After his relationship with USA Cab ended in 2007, Hristov worked for two other cab companies as an independent contractor and without any employee benefits.

Hristov admitted USA Cab did not specify any particular work hours or criticize him for taking days off, and he knew he should take work breaks and USA Cab did not tell him otherwise. Further, he did not suffer any job-related injury. He testified that drivers decided whether to take radio dispatch calls and what zones to work in, and he took only a few dispatch calls. He said drivers took credit cards at their discretion, and he did not do so.

Further, Hristov could not say how much he earned while driving a USA Cab taxi without looking at his tax returns, which his attorney refused to produce. He did produce some daily records that indicated his fares generally far exceeded minimum wages. He believed USA Cab treated him differently than other drivers, by "ignoring me with radio calls" and by not properly handling his request for repairs to his cab, and subjected him to different standards than other drivers.

H. *Final Hearing and Ruling*

The court finally heard the class certification motion on October 9, 2007, and it issued a ruling on November 7. The court denied the motion on the grounds that individual issues predominate over common issues; the lack of common issues shows class treatment is not a superior method of trying the case, and rather a class would be unmanageable; plaintiffs made an inadequate showing of plausible liability claims on a classwide basis; and Ali and Hristov are not adequate class representatives.

---

[1] USA Cab submitted 18 declarations, but the court sustained plaintiffs' objection to two of them on the ground the declarants did not lease a taxi from USA Cab during the class period.

On appeal, plaintiffs no longer seek class certification on the complaint's counts for USA Cab's alleged failure to provide meal and rest breaks, or alternatively premium pay (third and fourth), conversion (sixth) and negligence (eighth). They seek review only of the court's rulings as to the counts for USA Cab's alleged imposition of illegal fees and charges (first), failure to pay minimum wages (second), violation of the UCL (fifth) and violation of Labor Code section 2699 (seventh).[2]

## DISCUSSION

### I

### *Standard of Review*

■ "Under Code of Civil Procedure section 382, a class action is permitted 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' Class certification requires both an ascertainable class and a well-defined community of interest among class members." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575 [67 Cal.Rptr.3d 468, 169 P.3d 889].) " 'The "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Ibid.*)

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [I]n the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).)

---

[2] The complaint's fifth and seventh counts incorporate all preceding allegations of the complaint, and thus those counts include as predicate acts all alleged violations of the Labor Code and IWC wage orders, including the failure to provide meal and rest breaks, or alternatively, pay increased wages. By not pursuing class certification on the third and fourth counts, plaintiffs have implicitly relinquished class treatment of any claims under the fifth and seventh causes of action pertaining to meal and rest breaks.

"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339]; see *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 80 [89 Cal.Rptr.3d 34] ["Under the abuse of discretion standard, 'a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice.' "].)

II

*Scope of Trial Court's Inquiry*

Plaintiffs contend we must reverse the order denying class certification because the trial court, relying on the numerous declarations of putative class members, erroneously ruled on the ultimate question in the case and determined they were independent contractors rather than employees of USA Cab. The contention lacks merit.

Plaintiffs rely on *Linder, supra,* 23 Cal.4th 429, in which the trial court denied a motion for class certification based on its finding the complaint lacked merit as a matter of law, and the Court of Appeal affirmed the order. The complaint alleged Thrifty Oil Company (Thrifty) violated Civil Code section 1748.1, a provision of the Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.), by failing to offer a cash payment discount to all prospective buyers. There were no cases interpreting the statute. (*Linder, supra,* at p. 436.) The plaintiff contended the court "erroneously considered and prejudged the legal merits of the surcharge cause of action," and "where . . . a cause of action presents a legal question of first impression, its sufficiency is appropriately addressed only at trial, or through a pleading such as a demurrer, or on a dispositive pretrial motion for judgment on the pleadings, summary judgment or summary adjudication." (*Id.* at p. 437, fn. omitted.)

The Supreme Court agreed and reversed the order, explaining that "[w]hen the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied

the opportunity to proceed on legitimate claims. Substantial discovery also may be required if plaintiffs are expected to make meaningful presentations on the merits. All of that is likely to render the certification process more protracted and cumbersome . . . . Such complications hardly seem necessary when procedures already exist for early merit challenges." (*Linder, supra*, 23 Cal.4th at pp. 440–441, fn. omitted.)

In *Linder*, however, the court cautioned as follows: "Nothing we say today is intended to preclude a court from scrutinizing a proposed class cause of action to determine whether, assuming its merit, it is suitable for resolution on a classwide basis. Indeed, *issues affecting the merits of a case may be enmeshed with class action requirements*, such as *whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses*." (*Linder, supra*, 23 Cal.4th at p. 443, italics added, citing *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 [22 Cal.Rptr.2d 419]; *Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469, fn. 12 [57 L.Ed.2d 351, 98 S.Ct. 2454] [" 'Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples.' "].)

Further, in *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069 [56 Cal.Rptr.3d 861, 155 P.3d 268], the court clarified that in *Linder* "we said only that a plaintiff need not establish a likelihood of success on the merits in order to obtain class certification." (40 Cal.4th at pp. 1091–1092.) The court added: "It does not follow that, in determining whether the criteria of Code of Civil Procedure section 382 are met, a trial or appellate court is precluded from considering how various claims and defenses relate and may affect the course of the litigation, considerations that may overlap the case's merits." (*Id.* at p. 1092.)

Here, the court did not exceed its authority. This action does not involve a question of first impression and the court did not deny class certification based on a finding the complaint lacks merit as a matter of law. The court did not require plaintiffs to prove their case as a prerequisite to class certification. Rather, as shown by the following discussion, "the court simply considered evidence bearing on the factual elements necessary to determine whether to certify the class." (*Caro v. Procter & Gamble Co., supra*, 18 Cal.App.4th at p. 656.) At the hearing, the court expressly stated it understood "we're not trying the case today," but the declarations by purported class members went to issues relevant to class certification such as "manageability, commonality, do individual issues predominate."

## III

### *Commonality*

#### A

■ "A class may be certified when common questions of law and fact predominate over individualized questions. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. . . . [T]o determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761], fns. omitted.) A class action " 'will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law.' " (*Block v. Major League Baseball* (1998) 65 Cal.App.4th 538, 542 [76 Cal.Rptr.2d 567].) " 'The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members.' " (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

■ Here, USA Cab's liability is premised on the theory the purported class members were its employees, rather than independent contractors, and the company deprived them of benefits to which employees are entitled and saddled them with illegal burdens. The primary test of an employment relationship is whether the " 'person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' " (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*).) Under this rule, the right to exercise complete or authoritative control must be shown, rather than mere suggestion as to detail. A worker is an independent contractor when he or she follows the employer's desires only in the result of the work, and not the means by which it is achieved. (*Varisco v. Gateway Science & Engineering, Inc.* (2008) 166 Cal.App.4th 1099, 1103 [83 Cal.Rptr.3d 393].)

■ While the right to control work details is the most important factor, there are also " 'secondary' indicia of the nature of a service relationship." (*Borello, supra,* 48 Cal.3d at p. 350.) The secondary factors are principally derived from the Restatement Second of Agency, and include "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work

is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Borello, supra,* at p. 351; see Rest.2d Agency, § 220.) " 'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' " (*Borello, supra,* at p. 351.)

■ In *Borello,* the court instructed that in workers' compensation cases, the " 'control-of-work-details' test for determining whether a person rendering service to another is an 'employee' or an excluded 'independent contractor' must be applied with deference to the purposes of the protective legislation." (*Borello, supra,* 48 Cal.3d at p. 353.) The court explained that the "common law and statutory purposes of the distinction between 'employees' and 'independent contractors' are substantially different. While the common law tests were developed to define an employer's liability for injuries caused *by* his employee, 'the basic inquiry in compensation law involves which injuries *to* the employee should be insured against by the employer. [Citations.] . . . .' " (*Id.* at p. 352.) The court, however, declined to adopt any "detailed new standards for examination of the issue." (*Id.* at p. 354.)

The *Borello* court held that migrant harvesters were employees of a grower for purposes of workers' compensation despite evidence the grower exercised no actual control over the performance of the work. The court concluded the grower "exercises 'pervasive control over the operation as a whole,' " and "retains all *necessary* control over the harvest portion of its operations." (*Borello, supra,* 48 Cal.3d at pp. 356, 357.) The court explained that a "business entity may not avoid its statutory obligations by carving up its production process into minute steps, then asserting that it lacks 'control' over the exact means by which one such step is performed by the responsible workers." (*Id.* at p. 357.) The court noted the harvesters form "a regular and integrated portion" of the grower's business operation, "engage in no distinct trade or calling," "do not hold themselves out in business," "perform typical farm labor for hire wherever jobs are available," "invest nothing but personal service and hand tools," and "incur no opportunity for 'profit' or 'loss.' " (*Ibid.*; see also *Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288 [277 Cal.Rptr. 434] [under *Borello* principles lessee of taxi was company's employee]; accord, *Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd.* (1991) 235 Cal.App.3d 1363 [1 Cal.Rptr.2d 64]; *JKH Enterprises, Inc. v. Department of Industrial Relations*

(2006) 142 Cal.App.4th 1046 [48 Cal.Rptr.3d 563] [court found under *Borello* principles couriers were employees of courier service].)

B

■ We are mindful of the general principles of *Borello* and its progeny, but they are not class certification cases, and their particular facts differ from those before the court on the class certification motion. The question here is whether the court abused its discretion by finding plaintiffs failed to meet their burden of showing the predominance of common questions of fact as raised by the complaint. We find no abuse of discretion because the declarations of 36 putative class members as to their actual conduct amply support the finding.

For instance, the complaint alleges USA Cab exercised "pervasive and significant control . . . over the manner and means of performing [the] work." The control was allegedly demonstrated by, among other things, USA Cab's instructing lessees "as to which taxicab customers are to be picked up, and where and by when such pick-ups are to be made." It also alleges purported class members are an integral part of USA Cab's business because they service its customers. The declarations, however, show the declarants were not required to use USA Cab's dispatch service. Some declarants used it for between 20 and 60 percent of their business, many used it infrequently, and some chose not to use it at all.

Further, the complaint alleges putative class members "assume[d] no entrepreneurial risk" and provided no "significant tools or instrumentalities of their own in connection with the services they render" to USA Cab. The declarations, however, show that at their own expense declarants provided such items as map books, flashlights, tool kits, jumper cables, cell phones, computers, GPS navigational systems, and credit card machines. Further, some of the declarations stated declarants independently advertised and promoted their own services on Web sites and in phonebooks, and by giving out business cards and their personal cell phone numbers.

The complaint also alleges USA Cab's lessees had no control over the prices they charged. Most of the declarations show, however, that USA Cab did not require them to charge customers the standard metered rate. Rather, with varying frequency they chose to set their own rates, such as flat rates for trips, or rates below the standard metered rate.

■ Moreover, the declarations support a finding that common questions pertaining to the *fact* of damage do not predominate. The complaint alleges purported class members are entitled to restitution under the UCL based on

USA Cab's failure to provide them with workers' compensation coverage, and they are entitled to monetary damages because the company did not pay them minimum wages. Most of the declarations, however, state the declarants did not suffer on-the-job injuries,[3] and many of the declarations state the declarants earned net income equaling or exceeding minimum wages. The complaint also alleges USA Cab required class members to use its credit card system, and they were damaged by having to pay a 6 percent fee. The declarations, though, show that USA Cab did not require the declarants to accept credit cards it processed, and some did not use its credit card system. " '[T]here can be no class certification unless it is determined by the trial court that similarly situated persons have sustained damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage.' " (*Caro v. Procter & Gamble Co., supra*, 18 Cal.App.4th at p. 664.) When variations in proof of harm require individualized evidence, the requisite community of interest is missing and class certification is improper. (*Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 40 [10 Cal.Rptr.3d 82].)

Although the leases and training manuals are uniform, the court reasonably found the testimony of putative class members would be required on the issues of employment and fact of damage. Plaintiffs argued at the hearing that proof of employment as to any purported class member would constitute proof as to all purported class members, but the court reasonably rejected the argument that a single set of facts predominates. As the court explained after it issued its tentative ruling, "the trial [of a class action] I would expect would be a parade of drivers" presenting individual issues.

Plaintiffs' reliance on *In re FedEx Ground Package System, Inc., Employment Practices Litigation* (N.D.Ind., Oct. 15, 2007, No. 3:05-MD-527 RM) 2007 U.S.Dist. Lexis 76798 is misplaced. That case was multidistrict litigation involving numerous proposed class actions, in which the principal issue was FedEx Ground's classification of drivers as independent contractors rather than employees. In opposition to class treatment of a segment of the case, FedEx Ground produced a survey a third party conducted in which 36 interviewers telephoned 3,059 drivers in 31 states and asked them several prepared questions, including whether they considered themselves independent contractors or employees and which designation they preferred. The

---

[3] Plaintiffs claim the complaint's UCL count does not seek damages for work-related injuries that were not compensated for by workers' compensation insurance, and rather it seeks only declaratory relief pertaining to USA Cab not providing such coverage. The UCL count, however, alleges various unfair business practices pertaining to the lack of workers' compensation insurance coverage, including "failing and refusing to advise plaintiff and Class members who have sustained injuries arising out of and in the course of their work of their rights and entitlement to workers' compensation benefits," and that the practices "have proximately caused monetary damages to [plaintiffs]," for which they are entitled to restitution.

report stated, "FedEx Ground workers prefer to be independent contractors by a 52% to 20% margin." (*Id.* at p. *11.) The court found the report unpersuasive because the survey did not explain the terms "contractor" and "employee," and "ultimately calls for lay persons to state preferences and understandings about a relationship that the law defines" (*id.* at p. *18) and further, the question of whether the purported class members preferred being independent contractors or employees was "meaningless because the question doesn't inquire into [their] preferences as to the remedy they would receive for being wrongfully classified." (*Id.* at p. *19.) This case does not involve a survey, but rather declarations by putative class members as to their understanding of their relationships with USA Cab, evidence that California law expressly allows. (*Borello, supra*, 48 Cal.3d at p. 350.)

Plaintiffs also cite *Chun-Hoon v. McKee Foods Corp.* (N.D.Cal., Oct. 31, 2006, No. C-05-620 VRW) 2006 U.S.Dist. Lexis 82029 (*Chun-Hoon*), in which a federal district court denied the defendant's motion for reconsideration of an order provisionally certifying a class, under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.), consisting of all California residents who entered into independent distributorship agreements with the defendant from a specified date. The plaintiffs alleged violations of wage and hour laws based on the defendant's alleged misclassification of them as independent contractors rather than employees. The court considered the *Borello* factors and determined the plaintiffs satisfied their burden of showing questions of law and fact predominated, arising from the "defendant's own efforts to standardize its relationship with distributors." (2006 U.S.Dist. Lexis 82029 at p. *8.) In addition to distribution agreements and instruction booklets, the plaintiffs submitted deposition testimony that established "other uniform policies toward distributors," such as "common standards for a distributor's warehouse space," "established order and delivery dates," and "procedures for a DSR [district sales representative] or regional manager periodically to ride along with drivers to monitor service." (*Id.* at p. *9.) The court found that even though declarations by distributors that the defendant submitted showed the existence of some individual issues, the declarations were "from a non-representative sampling of the entire class" and did not bar class certification. (*Id.* at p. *14.)

Here, the facts are distinguishable from those in *Chun-Hoon*. Even if that were not the case, however, it does not necessarily follow that class certification was required here. As *Chun-Hoon* points out, there is no precise test for determining whether common issues predominate, and thus " 'the court must pragmatically assess the entire action and the issues involved.' " (*Chun-Hoon, supra*, 2006 U.S.Dist. Lexis 82029 at p. *6.) Perhaps another trial judge considering the matter in the first instance would have allowed class treatment, but that does not merit reversal. "A record presenting facts on which reasonable minds may differ is not a record establishing an abuse of

discretion." (*People v. Moya* (1986) 184 Cal.App.3d 1307, 1313, fn. 2 [229 Cal.Rptr. 402].) The ruling here does not exceed the bounds of reason or result in a miscarriage of justice.

## C

Additionally, plaintiffs complain that the court relied on improper criteria—statements in the lessees' declarations that they believed they were independent contractors rather than USA Cab's employees—and based thereon erroneously assumed they actually were independent contractors.[4] As discussed, however, it is well established that a worker's belief is one of several secondary indicia of his or her status. (*Borello, supra,* 48 Cal.3d at p. 350.) There is no suggestion the court relied solely on the declarants' beliefs or unduly focused on that factor. Indeed, even ignoring the paragraphs pertaining to the declarants' beliefs, the declarations provide substantial evidence to support a finding that common factual issues do not predominate.

## IV

### *Superiority*

Plaintiffs also submit that the court relied on improper criteria, the numerous declarations of purported class members, in determining class treatment is not superior to separate lawsuits.

■ "[O]ne must not lose sight of the fact that the class action statute 'is based upon the equitable doctrine of virtual representation, which " 'rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice.' " [Citations.]' " (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1234 [87 Cal.Rptr.2d 346].) Accordingly, a class action should not be certified unless " ' "substantial benefits accrue both to litigants and the courts" ' " (*Linder, supra,* 23 Cal.4th at p. 435), and the moving party proves a class action is "superior" to separate

---

[4] Plaintiffs seize on comments the court made on April 27, 2007, at a preliminary hearing on the class certification motion. USA Cab's counsel pointed out to the court that a worker's belief is "one factor" in determining his or her status. The court responded: "Let me ask plaintiff [Ali]—well, just if I'm hearing you [USA Cab's counsel] under that argument. But on point I have 20—I think that everyone would agree, have we clearly refuted plaintiff's allegations in the complaint in terms of what they [purported class members who gave declarations] view themselves, their status as? In other words, these are independent contractors. They want it that way. . . ." Contrary to plaintiffs' position, this does not show the court ruled that the declarants were independent contractors. Rather, the court was asking plaintiffs' counsel a question. Moreover, the court did not make any finding at the final hearing or in its written ruling that the declarants were independent contractors.

lawsuits by class members. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 14:15:1, p. 14-13 (rev. # 1, 2009).) "[E]ven if [common] questions of law or fact predominate, the lack of superiority provides an alternative ground to deny class certification." (*Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110, 120 [133 Cal.Rptr.2d 367] (*Basurco*).)

"In general, a class action is proper where it ' " 'provides small claimants with a method of obtaining redress' " ' and ' "when numerous parties suffer injury of insufficient size to warrant individual action." ' [Citations.] . . . [¶] In deciding whether a class action would be superior to individual lawsuits, 'the court will usually consider [four factors]: [¶] [(1)] The interest of each member in controlling his or her own case personally; [¶] [(2)] The difficulties, if any, that are likely to be encountered in managing a class action; [¶] [(3)] The nature and extent of any litigation by individual class members already in progress involving the same controversy; [and] [¶] [(4)] The desirability of consolidating all claims in a single action before a single court.' " (*Basurco, supra,* 108 Cal.App.4th at pp. 120–121.)

We find no abuse of discretion, because when individual issues of fact predominate over common issues, as here, "a class action would be extremely difficult to manage . . . ." (*Basurco, supra,* 108 Cal.App.4th at p. 121.) As in our opinion in *Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 857 [7 Cal.Rptr.3d 28], " 'questions respecting each individual class member's right to recover that would remain following any class judgment appear so numerous and substantial as to render any efficiencies attainable through joint trial of common issues insufficient, as a matter of law, to make a class action certified on such a basis advantageous to the judicial process and the litigants.' " Further, denial of class certification will not likely burden the court with multiple actions, given the lack of interest demonstrated by the declarations of 36 putative class members.

"[W]e will not substitute our judgment of the suitability of class treatment for that of the trial court, as long as the trial court applied the proper legal principles and assumptions, and the ruling is supported by substantial evidence." (*Reese v. Wal-Mart Stores, Inc., supra,* 73 Cal.App.4th at p. 1233.) We will not disturb the ruling here as it is based on proper legal criteria and supported by substantial evidence. Because there will be no class action, we are not required to consider plaintiffs' additional contention the court erred by determining Ali and Hristov would not be adequate class representatives.[5]

---

[5] We reject plaintiffs' argument the order on class certification must be reversed because the court improperly excluded the declaration of Hristov and documentary evidence pertaining to him, and the declarations of two other purported class members. The plaintiffs submitted the evidence shortly before the final hearing in this matter in support of a reply brief, and the court

## DISPOSITION

The order is affirmed. Respondents are entitled to costs on appeal.

Benke, J., and McIntyre, J., concurred.

A petition for a rehearing was denied August 14, 2009, and appellants' petition for review by the Supreme Court was denied October 28, 2009, S176053.

---

deemed it unfair because USA Cab had no opportunity to respond. Plaintiffs assert Hristov's declaration shows he would be an adequate class representative, an issue that is now moot. Plaintiffs do not explain how the other declarations ostensibly help their cause.