Filed 5/26/16  Sanchez v. Martha Green's Doughlectibles CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TRISHA LYNN SANCHEZ, | D069677 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1302043) |
| MARTHA GREEN'S DOUGHLECTIBLES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Bernardino County, David Cohn, Judge.  Affirmed.

Valencia & Cywinska, Mark Joseph Valencia and Izabela Cywinska Valencia for Plaintiff and Appellant.

Reid & Hellyer and Michael G. Kerbs for Defendant and Respondent.

Trisha Lynn Sanchez brought a putative class action against her former employer Martha Green's Doughlectibles, Inc. (MGD) alleging violations of California's labor and unfair competition laws.  Sanchez asserts the trial court erred in concluding settlement

agreements MGD entered into with the majority of the putative class members after her complaint was filed were valid. Sanchez also asserts the court improperly denied her motion for class certification. We reject these arguments and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Sanchez worked as a waitress for MGD at its restaurant in Redlands, California, from 2007 to 2012. In early 2013, Sanchez filed a putative class action asserting violations of the Labor Code, including claims for failure to offer rest breaks (Lab. Code, § 226.7),[1] failure to offer meal periods (§ 226.7), failure to pay overtime compensation (§ 510), and failure to provide accurate itemized wage statements (§ 226, subd. (a)). Sanchez also asserted the Labor Code violations supported a claim under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and sought to represent all aggrieved employees under the Private Attorney General Act of 2004 (§ 2698, et seq.).

MGD answered the complaint and the parties engaged in discovery. In December 2014, Sanchez filed her motion for class certification of a class she described as consisting of approximately 105 former and current MGD employees. Sanchez's motion identified three subclasses: (1) nonexempt hourly employees who were not provided overtime wages in the four years prior to the date Sanchez's complaint was filed; (2) nonexempt hourly employees who were not provided rest and meal periods in the four years prior to the date Sanchez's complaint was filed; and (3) nonexempt hourly

---

[1]     Undesignated statutory references are to the Labor Code.

2

employees who were not provided with accurate itemized statements in the four years prior to the date Sanchez's complaint was filed.

In support of the motion, Sanchez submitted her declaration, which attached: (1) her timecards; (2) wage statements that showed the hours worked and rate of pay for each pay period; and (3) an employee detail earnings report showing the hours worked and rate of pay for each pay period during the entire time Sanchez was employed by MGD. In her declaration Sanchez asserted that her wage statements and the employee detail earnings report showed she was not paid at the overtime rate even though her timecards showed that on some occasions she worked more than eight hours in one day. Sanchez also submitted excerpted deposition testimony of MGD's manager, J.R. Green. Green testified the restaurant's employee handbook, which went into effect in 2010, stated, "Each employee must clock out at the beginning of their lunch period and clock back in when they return to work." Green also testified that the handbook stated, "The length of—the time of [an employee's] lunch period would be determined by [a] supervisor."

Sanchez's motion was also supported by time cards and employee detail earnings reports for 18 other employees. Sanchez asserted the time cards for 10 employees in this sample showed overtime pay was required, but the employee detail earning reports indicated it was not paid. Sanchez also argued the records of four other employees showed the employees were entitled to meal breaks based on the hours on their time cards, but the employees did not clock out to take a break.

MGD filed its opposition to the motion for class certification in March 2015. In support MGD submitted settlement agreements it had entered into with 76 of the putative

3

class members after being served with Sanchez's complaint.[2]  Each agreement specifically referenced Sanchez's claims and contained a statement that the employee "agrees that there is a dispute with [MGD] as to whether rest periods, meal periods, overtime pay and accurate itemized statements were provided in accordance with [the] law."  By signing the agreement, the individual released his or her claims against MGD and agreed not to participate in Sanchez's purported class action in exchange for $150.  The agreement stated explicitly there would be no retaliation or adverse action taken if the employee chose not to sign the agreement.

In support of its opposition, MGD also provided evidence that after Sanchez's complaint was filed it undertook an audit of its employment practices.  Specifically, MGD asserted it located or attempted to locate all putative class members and began a review of each employee's payroll records.  Additionally, MGD asked each member of the putative class that it located to sign an audit memo, which explained the nature of Sanchez's claims and requested that the employee (or former employee) advise MGD of any occasion he or she was not provided with rest or meal breaks, or worked more than eight hours in one shift or 40 hours in one week and was not paid overtime.  The audit memo indicated MGD would review the information provided and conduct further investigation if necessary, and that MGD would "promptly provide the employee with appropriate remuneration to pay for any shortfall or penalties, as may be appropriate . . . ."  At the time it filed its opposition, MGD had obtained 92 signed audit

_____

[2]     MGD's opposition stated the number of current and former employees in Sanchez's proposed class was between 105 and 115.

memos from putative class members. None indicated they were denied meal or rest breaks, or were owed overtime pay.

MGD also submitted declarations of 11 other MGD employees who stated they had worked with Sanchez and each had personally observed her taking meal and rest breaks between eight and 150 times. Each of these declarants also stated they had been provided with meal and rest breaks, were relieved of all work duties during those breaks, and were paid for the time they were on breaks. Green and assistant manager Laura Leyvas each provided declarations stating that, "[a]lthough MGD's employee handbook did state for a period of time that employees were to clock in and out to take their meal breaks and that employees would not be paid for meal breaks, MGD did not follow either of these guidelines. Instead, MGD did not require its employees to clock out/in when they took their meal breaks, and in fact paid the employees during their meal breaks even though they were relieved of all duties."

MGD argued in its opposition that as a result of the settlement agreements, the total number of potential class members was not so numerous that it was impracticable for each to bring his or her own claim. MGD also asserted that, in light of the evidence that there was no uniform policy to prohibit meal and rest breaks, individual questions predominated over common ones. Sanchez filed a reply asserting the settlement agreements were invalid under section 206.5 and therefore class adjudication of her claims was superior. Before the hearing on Sanchez's motion, MGD submitted an additional 13 settlement agreements with putative class members, bringing the total to 89.

5

At the hearing, the trial court found the settlement agreements were valid and that certification was not appropriate.  The court concluded only 21 putative class members had not settled their claims and, because of the conflicting evidence on the provision of breaks and overtime pay, class proceedings were not superior to individual actions.  The trial court also found that because Sanchez had presented no evidence of a systematic policy of not paying overtime or giving breaks (and the defendant presented evidence that it did provide the requisite breaks, with pay), Sanchez would be required to prove each class member's claims on an individual, and not common, basis.  Sanchez timely appealed.

DISCUSSION

I

Sanchez first asserts that the trial court's determination that the settlement agreements are valid was error.  She contends that the agreements were not made in good faith and are, therefore, precluded by section 206.5, subdivision (a).

Section 206.5, subdivision (a) states, "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.  A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.  Violation of this section by the employer is a

6

misdemeanor."[3]  Under MGD's settlement agreement, each employee or former employee was paid $150 and agreed that the payment was "full and complete satisfaction of any and all claims and potential claims . . . against [MGD] based on the claims [in Sanchez's] lawsuit . . . ."  The agreements also contained a recital that the employee "agrees that there is a dispute with [MGD] as to whether rest periods, meal periods, overtime pay and accurate itemized statements were provided in accordance with [the] law."

Sanchez asserts that despite these recitations, there was no bona fide dispute concerning wages owed to the putative class members, and therefore the release is void under section 206.5.  In support of this assertion Sanchez points to the deposition testimony of MGD's owner, Martha Green, and J.R. Green, who both testified that they did not believe MGD violated the law and the payments were not warranted.  Sanchez contends that because MGD did not believe it owed any unpaid wages to the putative class members, there was no disagreement.

Sanchez's argument is not sound.  She misconstrues the bona find dispute requirement of section 206.5.  The legislative history of the statute, and subsequent cases, clarify that the purpose of the provision is to prevent employers from coercing a

_____

[3]     Subdivision (b) of section 206.5 provides that "For purposes of this section, 'execution of a release' includes requiring an employee, as a condition of being paid, to execute a statement of the hours he or she worked during a pay period which the employer knows to be false."  The related prior statute, section 206, subdivision (a), states, "In case of a dispute over wages, the employer shall pay, without condition . . . , all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed."

7

settlement of contested wages by withholding wages that the *employer concedes are owed*. (*Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 800 (*Chindarah*); *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203, 207 ["An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid."].)

The Court of Appeal in *Chindarah* addressed arguments similar to those advanced by Sanchez. There, the defendant employer entered into settlement agreements with putative members of a class action asserting claims for unpaid overtime and misclassification of employees as exempt from overtime pay. (*Chindarah, supra*, 171 Cal.App.4th at p. 798.) Thereafter, the plaintiffs amended their class action complaint to add as plaintiffs eight current and former employees who had signed the settlement agreements and claims alleging the agreements violated the Labor Code. In response, the defendant, Pick Up Stix, Inc., brought a cross-complaint alleging the new plaintiffs had breached the settlement agreements. (*Ibid*.) The plaintiffs then brought a motion for summary adjudication of the cross-complaint asserting the agreements were void under sections 206 and 206.5 and Pick Up Stix moved for summary judgment claiming the agreements barred recovery by the new plaintiffs. (*Ibid*.)

The trial court ruled in favor of Pick Up Stix, finding that because it produced evidence " 'creating a triable issue of fact as to whether or not [plaintiffs] were owed *any* additional wages' " it had shown a " 'good faith dispute with regard to classification of the employees.' " (*Chindarah, supra*, 171 Cal.App.4th at p. 799.) The Court of Appeal

8

affirmed, noting that the legislative history of section 206.5 "reveals that it was part of Assembly Bill 302 (1959 Reg. Sess.), which added section 206.5 to the Labor Code and section 7110.1 to the Business and Professions Code. (Stats. 1959, ch. 1066, § 1, p. 3127.) Business and Professions Code section 7110.1 provides that a licensed contractor who violates section 206.5 would be subject to disciplinary action as well as a misdemeanor charge. A letter to then Governor Edmund G. Brown from the AFL-CIO, which sponsored the bill, stated, 'Testimony before legislative committees developed the fact that there exists a rather widespread use of general release forms, particularly in the building industry in Southern California, whereby an individual, as a condition of receiving his payment, is required to forego all his defenses and agree that the payment is full and complete. [¶] Not infrequently the payments were made by bad checks, and accordingly the labor commissioner's office was without power to process the case because of the signing of the release agreement. [¶] The bill is intended to correct this condition, but at the same time to permit payment by check so long as it is honored.' " (*Chindarah,* at p. 801.) The legislation's purpose "was to protect employees from employers who attempt to coerce a settlement by withholding wages." (*Ibid*.)

*Chindarah* rejected the plaintiffs' argument that " 'wages actually due' " under section 206.5 includes "wages that are disputed, if they are ultimately found to be owing." (*Chindarah, supra*, 171 Cal.App.4th at p. 799.) Instead, the appellate court concluded, based on the language of section 206.5, subdivision (a) and its legislative history, that " '[w]ages are not "due" if there is a good faith dispute as to whether they are owed. Because [the employer's] defense that [the plaintiff] was an exempt employee

9

under California law would, if successful, preclude any recovery for [the plaintiff], a bona fide dispute exists and the overtime pay cannot be considered "concededly due." ' " (*Id*. at p. 802.)

Division Three of the Second District also rejected the argument advanced by Sanchez, concluding that a settlement agreement was not invalid under sections 206 and 206.5 where the putative class representative plaintiff released claims for overtime compensation that the defendant employer contended was not owed. (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587 (*Watkins*).) *Watkins* held sections 206 and 206.5 "simply prohibit[] employers from coercing settlements by withholding wages concededly due." The *Watkins* court explained, "wages are not considered 'due' and unreleaseable under . . . section 206.5, unless they are required to be paid under . . . section 206. When a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment— even if the payment is for an amount less than the total wages claimed by the employee." (*Ibid*.)

Like the employers in *Chindarah* and *Watkins*, and as the trial court concluded, MGD did not concede unpaid wages were due to Sanchez and the class she sought to represent. To the contrary, Martha and J.R. Green asserted the wages were not owed. MGD's evidence (in the form of the deposition testimony of Martha and J.R. Green, audit memos and employee declarations) supported the trial court's finding that a bona fide dispute existed and that no additional pay was concededly due. (*Chindarah, supra*, 171 Cal.App.4th at p. 802; *Watkins, supra*, 172 Cal.App.4th at p. 1587.)

10

Sanchez also asserts MGD is "attempting to avoid serious liability of a class action by 'picking-off' potential class members" and that "[g]iving 'free money' evidences a lack of consideration, and hence, a lack of any good faith . . . ." She notes that the putative class members who entered into the settlement agreement were not provided with their time records to review what was owed to them. Sanchez relies on an unpublished federal case from the Central District of California, *Kluss v. Credit Exch. Corp.* (C.D.Cal. Jan. 27, 2011, SACV 09-00080-CJC (MLGx)) 2011 U.S.Dist. Lexis 157501 (*Kluss*) to support these assertions.

In *Kluss*, the district court rejected the defendant's claim that the putative class representatives had waived claims for violations of the Labor Code by signing a general release of all claims at the termination of their employment (and well before bringing a class action) in exchange for $200 or $300. The court concluded the general release did not encompass the claims at issue in the case because the plaintiffs were not aware of those claims at the time they accepted the release. Because they were not aware of the claims, the court found the plaintiffs were not settling a " 'bona fide dispute' regarding the amount of wages that they were owed . . . ." (*Kluss, supra*, 2011 U.S.Dist. Lexis 157501 at p. *21.)

We do not find *Kluss* persuasive to the issues raised here. Each settlement agreement specifically informed the employee that the $150 payment was in exchange for the release of claims asserted by Sanchez in this lawsuit. The fact that there is no evidence that the employees who signed the agreement did not review their time cards before signing does not invalidate the release of claims. Nor does Sanchez assert that

11

MGD prevented the putative class members from reviewing their records. Further, the settlement agreements explicitly notified the employees of the claims asserted by Sanchez and stated that their employment by MGD would not be affected in any way if the employee decided not to sign the agreement. The agreements stated in bold: "There will be no retaliation or adverse action taken against Employee if Employee decides not to sign this Agreement."

In sum, we reject Sanchez's assertion that the settlement agreements are invalid. The evidence shows MGD did not concede anything was owed to the employees as a result of its failure to provide overtime or meal/rest breaks. Rather, MGD's principals strongly denied MGD violated the Labor Code and provided substantial evidence supporting this position. A bona fide dispute existed over the wages Sanchez asserts are owed, and MGD and the employees who signed settlement agreements were free to compromise those claims without running afoul of section 206.5, subdivision (a).

## II

Sanchez next argues that even if the settlement agreements are valid, the trial court abused its discretion by concluding she failed to meet the class certification requirements of Code of Civil Procedure section 382.

## A

" 'Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification.' " (*Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1337 (*Ali*).) "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of

12

permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 (*Linder*).)

B

Code of Civil Procedure section 382 authorizes a class action "whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' (Code Civ. Proc., § 382; see *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458.)" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker Restaurant Corp.*).) The California Supreme Court has "articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement

13

embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Ibid.*)

"[I]n determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.] 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' " (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327.)

Importantly, even if the community of interest requirement is met, a class action should not be certified unless " ' " 'substantial benefits accrue both to litigants and the courts' " ' (*Linder, supra*, 23 Cal.4th at p. 435), and the moving party proves a class action is 'superior' to separate lawsuits by class members." (*Ali, supra,* 176 Cal.App.4th at pp. 1352-1353.) " '[E]ven if [common] questions of law or fact predominate, the lack of superiority provides an alternative ground to deny class certification.' " (*Id*. at p. 1353.) Four factors are commonly evaluated in determining the superiority of class certification: The interest of each class member in controlling his or her own case; the " 'difficulties, if any, that are likely to be encountered in managing' " the class; the extent of existing litigation by individual class members; and " '[t]he desirability of consolidating all claims in a single action before a single court.' " (*Basurco v. 21st Century Insurance Co.* (2003) 108 Cal.App.4th 110, 121 (*Basurco*).)

14

C

Sanchez asserts that the trial court abused its discretion by concluding that individual issues predominate over common ones and that the court in effect conceded this point by stating, "if you had 115 members of the class, the balance of common questions versus individual questions would come out—would likely come out differently." Sanchez argues the analysis of commonality is no different if there are 115 class members or 26 class members. In both cases, she asserts, the same common issues must be adjudicated: "Were the employees paid overtime or not? Did they receive meal periods or not? Did they receive accurate wage statements or not?"

In contending these questions can be resolved simultaneously for all class members, Sanchez points to statements in MGD's handbook that (1) employees were required to clock out for their lunch break and (2) the length of lunch periods was to be determined by a supervisor. Sanchez also points to her own declaration, in which she stated that MGD did not allow her to take breaks, and to the sampling of time cards she submitted that she asserts show employees did not clock out for breaks. As MGD states, violations of wage and hour requirements have been commonly certified for class proceedings where the employer has a uniform policy that is *facially* inconsistent with California law. (See, e.g., *Brinker Restaurant Corp., supra*, 53 Cal.4th at p. 1033 ["The theory of liability—that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment."].)

15

Here, there was a written policy in MGD's handbook, but the policy did not run afoul of the labor laws. It did not address whether breaks could be taken, only that the employee should clock out. The fact that the handbook called for the supervisor to determine the length of an employee's lunch period was also not evidence of a uniform policy not to provide a break or to provide breaks that were insufficient. Sanchez's theory is not that the handbook's instruction that employees must clock out for breaks so that they would not be paid for that time violated the Labor Code. Rather, she speculates that because the time cards show employees did not clock out for breaks, and the written policy was that they should, employees were not uniformly provided with breaks and were not paid overtime.

MGD, however, refuted this theory of commonality. Its witnesses (managers and employees) stated that the handbook's clocking out and in requirement was not followed, and that the restaurant's actual policy was to provide *paid* breaks to its employees. This conflicting evidence supports the trial court's finding that the testimony of each putative class member would be required to determine whether MGD ran afoul of the meal break, rest break and overtime pay requirements with respect to that employee. Contrary to Sanchez's assertion, because there was evidence that employees were provided with paid breaks for which they did not clock out, time cards showing shifts longer than eight hours could not, on their own, establish that MGD had a policy of not paying overtime wages or

16

failing to provide breaks.[4]  These facts support the trial court's determination that individual questions predominated over common ones, and that a class action was not the best way to resolve the claims of the remaining class members.  (See *Ali, supra,*176 Cal.App.4th at p. 1349 ["[T]here is no precise test for determining whether common issues predominate, and thus ' "the court must pragmatically assess the entire action and the issues involved. . . ." ' 'A record presenting facts on which reasonable minds may differ is not a record establishing an abuse of discretion.' "], citation omitted; *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 728 ["for purposes of certification, the proper inquiry is 'whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment' "].)

We also do not agree with Sanchez that the court's statement that the relatively small number of remaining potential class members pushed it to conclude that individual questions outweighed common ones shows there was an abuse of discretion.  Other statements made by the trial court make clear that the court was considering the community of interest requirement in the context of determining whether the class mechanism was superior.  The court stated that 21 class members is not "so high that a class action . . . is the best way to go" and that it needed "to look at the other elements to determine whether or not the class action is the *appropriate vehicle.*"  (Italics added.)  The court noted that even if it assumed the claims were worth only the $150 provided for in the settlements, a class action was not the only method of proceeding.  Rather "there

---

4      For instance, a time card showing a shift of eight and one-half hours would not lead to overtime pay if the employee took a paid half-hour break.

are other remedies available for wage/hour claims. There are administrative claims, there are small claims actions."

As the trial court's statements demonstrate, the issues of commonality and superiority are intertwined. (See *Ali, supra*, 176 Cal.App.4th at p. 1353 ["when individual issues of fact predominate over common issues, as here, 'a class action would be extremely difficult to manage' "].) If some questions are common and some are individual, the size of the class necessarily impacts the court's examination of whether the class mechanism is superior to individual actions. The existence of individual issues may not preclude certification when the class mechanism is the only method of adjudicating small claims. (See *Basurco, supra*, 108 Cal.App.4th at pp. 120-121 ["In general, a class action is proper where it ' " 'provides small claimants with a method of obtaining redress' " ' and ' "when numerous parties suffer injury of insufficient size to warrant individual action." ' "].)

Here, Sanchez concedes that if the settlement agreements are valid, the class she seeks to represent consists of, at most, 26 members.[5] MGD provided evidence that 17 of the remaining putative class members could not be located or did not respond to MGD's attempts to contact them. The denial of class certification, therefore, was not likely to burden the court with multiple actions. Further, any nonsettling employees could join the current action or bring their own individual claims. As MGD asserted, it would be unfair

[5]    As noted, the record does not establish the exact number of class members. At the hearing the court referred to 115 class members, and 21 who had not signed a settlement agreement. MGD represented in its opposition that the class consisted of between 105 and 115 former and current employees.

18

"to certify a class of whose members cannot be located or who will not participate insofar as MGD will have no ability to cross-examine them regarding the claims asserted on their behalf . . . ."

Sanchez has not shown the trial court applied improper criteria to deny her motion for class certification. The facts before the court supported its determination that common issues do not predominate over individual ones and that a class proceeding is not a superior method of adjudicating the claims of the absent putative class members.

DISPOSITION

The order is affirmed. Respondent is awarded costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

IRION, J.

PRAGER, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19