[No. B156776. Second Dist., Div. One. Apr. 3, 2003.]

COSME BASURCO et al., Plaintiffs and Appellants, v.
21ST CENTURY INSURANCE COMPANY, Defendant and Respondent.

FELICITAS FREW et al., Plaintiffs and Appellants, v.
21ST CENTURY CASUALTY COMPANY, Defendant and Respondent.

**COUNSEL**

Gruber & Kantor, Daniel S. Gruber, Glenn R. Kantor, Joel A. Cohen; Shernoff, Bidart & Darras, Michael Bidart, Jeffrey Ehrlich; Girardi & Keese and Thomas V. Girardi for Plaintiffs and Appellants.

Barger & Wolen, Kent R. Keller, Larry M. Golub; Horvitz & Levy, Ellis J. Horvitz, David S. Ettinger and Lisa Perrochet for Defendants and Respondents.

## OPINION

**MALLANO, J.**—In this case, plaintiffs seek to certify a class consisting of homeowners who were allegedly denied insurance benefits by 21st Century Insurance Company and 21st Century Casualty Company (both 21st Century) in the aftermath of the January 17, 1994 Northridge earthquake.

The trial court denied plaintiffs' class certification motion, finding that common questions of law and fact did not predominate over individual issues and that a class action would not be superior to individual lawsuits. We agree with the reasons given by the trial court and affirm.

I

### BACKGROUND

This appeal involves two cases consolidated in the trial court, *Basurco v. 21st Century Ins. Co.* (Super. Ct. L.A. County, 1999, No. BC212224) (*Basurco*), and *Frew v. 21st Century Casualty Co.* (Super. Ct. L.A. County, 2001, No. BC243390) (*Frew*).

Plaintiffs' homeowners policies with 21st Century contained a standard "Suit Against Us" provision, which stated: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the occurrence causing loss or damage." Plaintiffs allege that 21st Century improperly calculated the one-year period from the date of the earthquake instead of the date on which the property damage became appreciable.

In *Basurco*, the purported class consists of policyholders who made initial claims for earthquake damage within one year of the earthquake. 21st Century's adjusters inspected plaintiffs' properties, and the claims were paid. Thereafter, 21st Century wrote to the policyholders, advising them to report any subsequently discovered damage. More than one year after the earthquake, the policyholders discovered further damage and made supplemental claims. 21st Century reinspected the properties, concluded that the earthquake had caused the newly discovered damage, and denied the claims, relying on the one-year "Suit Against Us" provision.

In *Frew*, the alleged class consists of policyholders who lived in condominiums, whose policies included coverage for "additional living expenses" (ALE), and who had to move out of their homes as a result of the earthquake. The policyholders presented claims for ALE more than one year after

the earthquake, often because the repairs to their homes did not begin until then. 21st Century denied the claims, relying on the one-year contractual limitations period.

The insurance claims in *Basurco* and *Frew* were revived by section 340.9 of the Code of Civil Procedure. That section, enacted in 2000 and effective January 1, 2001, provides: "(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage. [¶] (b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period." (Hereafter section 340.9.)

After section 340.9 was enacted, 21st Century processed the supplemental property damage claims of the named plaintiffs in *Basurco* and made an additional payment on each claim. 21st Century also processed the ALE claims of the named plaintiffs in *Frew* and made a payment on each claim.

In moving to certify a class, plaintiffs submitted evidence with respect to 21st Century's processing of their claims. In the *Basurco* action, there were four named plaintiffs, the Basurcos and the Niebergers. Cosme and Leticia Basurco made an initial claim for earthquake damage on January 19, 1994, two days after the earthquake. They submitted a sworn "proof of loss" statement on May 7, 1994, indicating that the total loss and damage was $101,394.51 and that $71,374.86 was due under the policy.

On May 20, 1994, 21st Century sent the Basurcos a "close-out" letter, discussing various deductibles and stating that they would be paid $71,374.86, which included $1,581.08 for damage to personal property. The letter referred to the one-year "Suit Against Us" provision and stated, "If you discover any damages such as [fire, water, or glass breakage], please recontact us so we can review and consider them."

On June 23, 1994, the Basurcos filed a supplemental claim involving primarily roof problems. 21st Century made an additional payment of $5,091.35. On July 17, 1995, the Basurcos presented another claim, this time for asbestos damage. By letter dated August 29, 1995, 21st Century denied the claim based on the one-year contractual limitations provision.

Nearly two years later, on February 4, 1997, Mr. Basurco wrote to 21st Century about a crack in the foundation and moisture damage to wooden floors. 21st Century reopened the Basurco file and assigned a structural engineer to investigate the claim. The engineer concluded that the foundation had not sustained any damage, cracks, or signs of distress due to the earthquake. The water problem was caused primarily by the original, unchanged position of the slab, which was at a lower elevation than the outside grade. The earthquake was a secondary cause of the water damage. 21st Century valued the supplemental earthquake damage at $11,906.45. On February 24, 1998, 21st Century denied the claim, relying on the one-year contractual suit limitation and the lack of coverage for certain types of property damage.

The other named plaintiffs in the *Basurco* action, Roy and Doris Nieberger, submitted a property damage claim on January 22, 1994, describing damage in the way of "cracks on the outside of the house, sliding door cracked, and personal property including a crystal lamp." The only substantial damage was to a masonry retaining wall. On April 19, 1994, 21st Century sent the Niebergers a check for $3,550.32.

On June 5, 1995, Ms. Nieberger telephoned 21st Century, reported supplemental damage, and said she would have a contractor prepare an estimate. On July 24, 1995, Ms. Nieberger sent 21st Century a letter and an estimate for the repairs, which included "repair and respray all acoustic ceilings," "R & R garage slab," "clean all carpet in house and reset," "R & R entry floor with ceramic tile," "kitchen remodel to include R & R dishwasher," "refinish kitchen cabinets," "complete rear bath remodel," and "master bath remodel." 21st Century sent an adjuster to the Niebergers' home to inspect the property. It appeared that the supplemental claim did not exceed the policy's earthquake deductible. On October 13, 1995, after the inspection was completed, 21st Century sent the Niebergers a letter of denial, citing the one-year contractual limitations period.

On June 18, 1999, the Basurcos and the Niebergers filed this action against 21st Century, alleging causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the California unfair competition law (Bus. & Prof. Code, §§ 17200-17209).

On February 21, 2001, after section 340.9 was enacted, 21st Century responded to a letter from the Basurcos' attorney, stating that it would readjust their claim. On May 31, 2001, a 21st Century analyst, a construction consultant, a structural engineer, a geologist, and an environmental expert inspected the Basurcos' home. On November 1, 2001, 21st Century sent the

Basurcos a check in the amount of $54,218.47 for supplemental earthquake damage.

As with the Basurcos, 21st Century notified the Niebergers that it would readjust their claim in accordance with section 340.9. On July 31, 2001, a 21st Century analyst, a construction consultant, a structural engineer, a geologist, an environmental expert, a fireplace expert, and a carpet installer inspected the Niebergers' home. On November 8, 2001, 21st Century sent the Niebergers a check for $79,661.02 as compensation for supplemental earthquake damage.

The complaint in the *Frew* case was filed on January 16, 2001, alleging causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the California unfair competition law (Bus. & Prof. Code, §§ 17200-17209). The complaint alleged that on May 19, 1995, Tom Frew telephoned 21st Century, stating that he had just learned from his homeowners association that he needed to move out of his condominium so that repairs could be made. He submitted a letter to 21st Century dated June 21, 1995, estimating that he would incur between $3,354.20 and $4,365.60 in ALE. 21st Century denied the claim on the ground that Frew had not given notice of actual or possible ALE during the one-year contractual limitations period. After section 340.9 was enacted, 21st Century readjusted the claim and paid $9,725.35 to cover the cost of moving, storage, packing and unpacking, and rent.

The other named plaintiff in *Frew*, Gail Uyehara, had a similar experience. Her claim for ALE was denied because it was first made more than one year after the earthquake. After section 340.9 was enacted, 21st Century readjusted her claim and paid $5,768.50.

Of the two cases, *Basurco* was filed first and assigned to Judge Ann L. Kough. Shortly after *Frew* was filed, it was assigned to Judge Kough, and the two cases were consolidated. On November 30, 2001, the *Basurco* and the *Frew* plaintiffs filed separate motions for class certification. 21st Century filed opposition papers. On January 23, 2002, Judge Kough heard argument and took the motions under submission. Two days later, she denied the motions by minute order and filed a 20-page statement of decision explaining the basis of her ruling. Plaintiffs filed a timely appeal.

## II

### DISCUSSION

"Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. . . . ' "By

establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' . . . ■ Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' . . . But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' . . .

■ "Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. . . . The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' . . . .

■ "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [I]n the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used . . . ; or (2) erroneous legal assumptions were made . . .' . . . . Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' . . . Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434-436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*), citations omitted; accord, *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

■ "The burden is on the party seeking certification to establish . . . a well-defined community of interest among the class members. . . . [¶] To establish the requisite community of interest, the proponent of certification must show . . . that questions of law or fact common to the class predominate over the questions affecting the individual members . . . . In essence, this means 'each member must not be required to individually litigate

numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants.'" (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913-914 [103 Cal.Rptr.2d 320, 15 P.3d 1071], citations omitted.)

## A. *Common Questions of Law and Fact*

▋ Although section 340.9 revived plaintiffs' causes of action, that statute has no bearing on whether common questions of law or fact predominate. The one-year "Suit Against Us" provision in 21st Century's policies has the same purpose and effect as a statute of limitations: It barred plaintiffs' claims on procedural, not substantive, grounds. (See *Hall v. Harker* (1999) 69 Cal.App.4th 836, 844 [82 Cal.Rptr.2d 44]; *Lent v. Doe* (1995) 40 Cal.App.4th 1177, 1184 [47 Cal.Rptr.2d 389].) 21st Century's denial of plaintiffs' claims as untimely does not mean that the claims have merit. As the trial court explained:

"[E]ach of the complaints contain[s] causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. . . . The Court would have to conduct an individualized analysis of each putative class member's claim to determine if there even *was* a breach in the first instance. . . . Since a claim for breach of the implied covenant of good faith and fair dealing is predicated on a breach of contract . . . , the Court would also have to conduct for each putative class member an individualized analysis of whether Defendant breached the implied covenant. The fact that CCP § 340.9 effectively restored claims that had been barred based on the *statute of limitations* does not get the Plaintiffs past the problem of having to first prove the *existence* of the breach and any alleged bad faith on an individual basis." (Italics in original.)

"Class actions will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law." (*Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 988-989 [198 Cal.Rptr. 916].) "[A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his case . . . ." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

To take an example, Mr. Basurco wrote to 21st Century nearly two years after the earthquake, complaining about a crack in the foundation, among

other things. 21st Century reopened the Basurco file and assigned a structural engineer to investigate the claim. The engineer concluded that the foundation had not sustained any damage as a result of the earthquake. 21st Century denied benefits for that portion of the claim based on the one-year contractual limitations provision. Thus, even assuming that 21st Century improperly denied the claim on procedural grounds, the claim purportedly lacked substantive merit at least in part.

The claims of the Basurcos and the Niebergers also demonstrate that, in determining the merit of a policyholder's claim, 21st Century may have to send a team of experts—a construction consultant, a structural engineer, and a geologist—to each policyholder's home. No two investigations will be the same. For instance, one of the Basurcos' claims involved asbestos damage; the Niebergers submitted a claim for damage to a retaining wall. All told, 21st Century paid the Basurcos around $130,680 and the Niebergers, $83,200. These figures illustrate that the existence of damage, the cause of damage, and the extent of damage would have to be determined on a case-by-case basis.

The same is true of the ALE claims, like those of Frew and Uyehara, who received $9,725.35 and $5,768.50, respectively. After the passage of section 340.9, 21st Century sent letters to about 162 condominium owners whose ALE claims had been denied as untimely under the contractual one-year period. 21st Century's preliminary review of those claims on the merits suggested that many might have been unrelated to condominium association repairs. Some appeared to involve claims for loss of rents where the policyholder had *permanently* relocated before the repairs had begun. Others seemed concerned with situations where the policyholder did not have to move out, no additional living expenses had been incurred, the condominium complex was being upgraded instead of repaired, or the damage was not to covered property.

In light of the evidence, we agree with the trial court that this case is governed by the analysis in *City of San Jose v. Superior Court, supra,* 12 Cal.3d 447. In that case, the plaintiffs, who lived in the flight pattern of the San Jose airport, filed suit against the city, seeking recovery for diminution in the market value of their property caused by aircraft noise, vapor, dust, and vibration. The trial court certified a class. The Supreme Court reversed, stating:

"[T]he present action for nuisance and inverse condemnation is predicated on facts peculiar to each prospective plaintiff. An approaching or departing aircraft may or may not give rise to actionable nuisance or inverse condemnation depending on a myriad of individualized evidentiary factors. While

landing or departure may be a fact common to all, liability can be established only after extensive examination of the circumstances surrounding each party. Development, use, topography, zoning, physical condition, and relative location are among the many important criteria to be considered. No one factor, not even noise level, will be determinative as to all parcels. [¶] The uncontradicted evidence reveals the development, character, and uses of the geographic region of this proposed class are diverse. . . . [¶] . . . [¶]

"[T]he [class action] scheme is incompatible with the fundamental maxim that each parcel of land is unique. . . . Although this rule was created at common law, the very factors giving it vitality in the simple days of its genesis take on added significance in this modern era of development. Simply stated, there are now more characteristics and criteria by which each piece of land differs from every other.

"We decline to alter this rule of substantive law to make class actions more available. Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at pp. 460-462, citations and fn. omitted.) Here, "[n]o one factor . . . will be determinative as to all parcels," and "each parcel of land is unique." (*Id.* at p. 461.)

Plaintiffs' reliance on *B.W.I Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341 [235 Cal.Rptr. 228] is misplaced. There, the court held that a class action was appropriate where several corporate defendants were sued for engaging in an alleged price-fixing conspiracy. As stated in *B.W.I,* "[m]ost courts hold that when a conspiracy to fix prices has been alleged, common questions predominate over any questions affecting only individual class members." (*Id.* at p. 1348.) That is not the case here.

B. *Superiority*

Because a class should not be certified unless "substantial benefits accrue both to litigants and the courts" (*Linder, supra,* 23 Cal.4th at p. 435), the question arises as to whether a class action would be superior to individual lawsuits (see *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 660-662 [22 Cal.Rptr.2d 419]; *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 773 [259 Cal.Rptr. 789]). We conclude that it would not. Thus, even if questions of law or fact predominate, the lack of superiority provides an alternative ground to deny class certification.

In general, a class action is proper where it " ' "provides small claimants with a method of obtaining redress" ' " and " 'when numerous parties suffer

injury of insufficient size to warrant individual action.'" (*Linder, supra,* 23 Cal.4th at p. 435; accord, *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1235 [87 Cal.Rptr.2d 346].) The present case is not of that kind.

■ In deciding whether a class action would be superior to individual lawsuits, "the court will usually consider [four factors]: [¶] [(1)] The interest of each member in controlling his or her own case personally; [¶] [(2)] The difficulties, if any, that are likely to be encountered in managing a class action; [¶] [(3)] The nature and extent of any litigation by individual class members already in progress involving the same controversy; [and] [¶] [(4)] The desirability of consolidating all claims in a single action before a single court." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶ 14:16, p. 14-6; accord, *Schneider v. Vennard* (1986) 183 Cal.App.3d 1340, 1347 [228 Cal.Rptr. 800].)

■ Applying the first factor, putative class members have a strong interest in controlling their own cases given the nature of the relief sought— the repair of substantial damage to their homes and the payment of expenses for having to live elsewhere during repairs. As to the second factor, a class action would be extremely difficult to manage because individual issues predominate over common questions of law and fact. The existence, type, and extent of damage varies from case to case. For purposes of the third factor, 21st Century estimates that, as of September 2002, it was already a party in approximately 287 separate earthquake actions with over 1,500 plaintiffs. And, regarding the fourth factor, the complexity of the issues in the pending cases makes it impractical and thus undesirable to consolidate all 287 actions into a single proceeding.

In denying plaintiffs' motions, the trial court observed that "the procedures the Court has put in place up to this point (of resolving discovery disputes, in particular) demonstrate that class certification is not a superior means of resolving these claims, and may lead to difficulty in managing the cases."

Since then, the superior court has taken additional steps to manage *all* of the earthquake insurance cases with respect to *all* insurance company defendants. About 1,800 such cases were filed at the end of 2001. The superior court divided the earthquake insurance cases into five groups—by insurer— and assigned each group to one of five superior court judges. Judge Peter D. Lichtman was assigned the 21st Century cases.

The superior court also adopted a global order to cover all of the cases. In adopting that order, the court held a general hearing on May 20, 2002, at

which counsel for policyholders and counsel for insurance companies were permitted to comment on the draft order. At the beginning of the hearing, Judge Carolyn B. Kuhl commented: "What we want to do is to be as creative as possible in coming up with ways to handle the cases with the following goals in mind. [¶] Number one, reducing litigation costs and the burdens of litigation on the parties; number two, expediting resolution of the cases; and third, maximizing the quality of decision-making for counsel, the parties, the court and ultimately the finder of fact." Counsel were then permitted to come forward and address any aspect of the proposed order.

On May 21, 2002, the superior court adopted "Global Case Management Order No. 1." Under the order, each of the five groups of cases will have a "Plaintiffs' Steering Committee" and a "Defendants' Steering Committee," composed of attorneys representing the two respective sides. Each committee will have one "Lead Counsel." The global order also specifies a standard form for case captions, establishes a means of serving papers electronically, and provides deadlines for serving pleadings.[1]

To certify a class in this case would undermine the efforts of the superior court to manage the hundreds of other similar cases. We will not turn our backs on the prodigious and innovative efforts of the superior court to manage the complexities of the earthquake insurance litigation. Accordingly, we affirm the trial court's order.

III

DISPOSITION

The order is affirmed.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied April 23, 2003, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.

---

[1] Pursuant to 21st Century's request, we take judicial notice of documents filed in the superior court in connection with the global case management order. (See *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1112-1113 & fn. 1 [90 Cal.Rptr.2d 647, 988 P.2d 568]; *Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 464, fn. 2 [112 Cal.Rptr.2d 119].)