Filed 7/22/13; pub. order 8/20/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID HENDLEMAN et al., | B235404 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC406059) |
| v. | |
| LOS ALTOS APARTMENTS, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Johnson, Judge. Affirmed.

Law Office of Sheri L. Kelly, Sheri L. Kelly; Consumer Law Offices and Daniel T. LeBel for Plaintiffs and Appellants.

Willis Depasquale, James M. Hansen, Larry N. Willis and Thomas M. Rutherford, Jr., for Defendants and Respondents.

INTRODUCTION

Named plaintiffs David Hendleman and Anne Aaronson appeal from the order of the trial court denying their motion for certification of a class of tenants at the Los Altos Apartments in the context of their lawsuit against the landlord. Plaintiffs brought this action alleging the landlord failed to repair and maintain the property in a safe and habitable condition over a period of 10 months, unlawfully demanded increased rents, and retaliated against the tenants for exercising their rights. The trial court denied plaintiffs' motion for class certification for lack of ascertainability, community of interest, and superiority. In their appeal, plaintiffs contend that the class is ascertainable and there are common issues of law and fact, with the result they should be able to proceed as a class against defendants Los Altos Apartments, L.P., Charles and Cynthia Eberly, Inc., Allen Gross, Charles Eberly and David Strahm who are owners, managers, or representatives of the apartment building (together the landlord or defendants). To the extent problems of ascertainability or commonality exist, they argue, the class can be modified. We conclude the trial court correctly ruled that individual issues of law and fact predominate all five causes of action. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The ordinances at issue*

Plaintiffs' lawsuit is premised on two City of Los Angeles ordinances, the Rent Escrow Account Program (REAP) (L.A. Mun. Code, § 162.00 et seq.) and the Los Angeles Rent Stabilization Ordinance (RSO) (L.A. Mun. Code, § 151.00 et seq.). The Los Angeles City Housing Code is designed to address the problem of "substandard and unsanitary residential buildings" in the city that render the dwellings "unfit or unsafe for human occupancy" and are detrimental to the health, safety, and welfare of their occupants and threaten the physical, social, and economic stability of residential buildings. (L.A. Mun. Code, § 161.102.) The goal of REAP is to provide a "just, equitable and practical method" for enforcement of the purposes of the Housing Code and "to encourage compliance by landlords with respect to the maintenance and repair of residential buildings, structures, [and] premises." (L.A. Mun. Code, § 162.01(A).) The

2

RSO addresses a declared shortage of decent, safe and sanitary housing at affordable levels that has a detrimental effect on substantial numbers of renters in the city. (L.A. Mun. Code, § 151.01.)  The RSO regulates rents to safeguard tenants from excessive rent increases while providing landlords with reasonable returns from their rental units.  (*Ibid*.)

Under REAP, the Los Angeles Housing Department (LAHD), among other city agencies, periodically inspects rental buildings and orders landlords to correct violations of the city's Housing Code and California's Health and Safety Code (L.A. Mun. Code, § 161.401, 161.201, 161.602.1, 161.701.2 & 161.702.)  If the property is the subject of one or more of such orders, the period for compliance has expired, and the orders concern violations that affect the health or safety of the occupants, or if the property is subject to the RSO and results in the deprivation of housing services or habitability, the LAHD places the property into REAP.  (L.A. Mun. Code, §§ 162.03-162.05.)  Among the effects of being placed into REAP is a mandatory reduction in rents, up to 50 percent, according to a schedule that takes into account the nature of the violation, the severity of the conditions, and the history of past untenantable conditions.  (L.A. Mun. Code, § 162.05.)

When it accepts a property into REAP, the LAHD serves notice on all affected tenants (L.A. Mun. Code, § 162.04(E)) and establishes a trust fund account into which tenants may deposit rent payments.  (L.A. Mun. Code, § 162.07(a)(1).)  Once the landlord complies with the notices and corrects the violations, the LAHD terminates REAP and returns the funds in the escrow account minus fees to the landlord. (L.A. Mun. Code, § 162.08.)

The RSO regulates rents.  (L.A. Mun. Code, § 151.01.)  A rent increase is defined as an increase in rent or a reduction in housing services without a concomitant reduction in rent.  (L.A. Mun. Code, § 151.02.)  The RSO controls the rate at which a landlord may increase rent for property that is subject to the RSO.

2. *The Los Altos Apartments and the LAHD*

The Los Altos Apartments, located at 4121 Wilshire Boulevard, Los Angeles, is a 68-unit, five story apartment building constructed in the 1920s. Twenty eight units, or 40 percent of the apartments, are affordable units intended for low-income tenants.

The LAHD inspected the Los Altos Apartments three times in May, July, and August 2006. It placed the property into REAP in February 2007 (Case No. 79550) and reduced the rents by the maximum of 50 percent for "almost every single unit." The REAP order became final in March 2007. (L.A. Mun. Code, § 162.02(A).)

The Los Altos Apartments sued the City of Los Angeles (the City) for placing it into REAP. Among other things, the landlord alleged that it had cooperated with LAHD's inspectors and timely repaired the violations. The trial court dismissed the action because, inter alia, the Los Altos Apartments failed to exhaust its administrative remedies. Another division of this District Court of Appeal affirmed the lawsuit's dismissal on the basis that the Los Altos Apartments failed to present a timely claim. (*Los Altos Apartments, L.P. v. City of Los Angeles* (July 7, 2011, B222174) [nonpub. opn.].)[1]

3. *The instant complaint brought by the named plaintiffs*

The named plaintiffs filed the fourth amended complaint on behalf of similarly situated tenants who resided at, and paid rent to, the Los Altos Apartments between January 22, 2005 and September 2010. The complaint alleges that the LAHD issued the landlord repeated notices and placed the property into REAP for the following: fire safety violations, such as the failure to maintain required self-closing, self-latching separation fire doors in the common areas, obstructed exits and stairwells blocked emergency egress, and problems with the exterior weatherproofing, all of which defects are alleged to have an impact on the common areas and constitute violations of the Los Angeles Municipal Code and California's Health and Safety Code. The complaint alleges that

---

[1] Unpublished opinions of the Court of Appeal may be cited under the doctrines of law of the case and collateral estoppel. (Cal. Rules of Court, rule 8.1115(b).)

4

during the class period, the landlord reduced the following housing services: (1) fire and emergency safety and (2) weatherproofing, which service reductions caused the building to be accepted into REAP; along with (3) trash pickup causing overflowing trash bins; (4) elevator function; and (5) security, all of which deficiencies affect tenants in a similar fashion. The complaint alleges further that in violation of REAP, the landlord demanded the full unadjusted rent, and sometimes more, by (1) issuing multiple notices to plaintiffs and the putative class falsely stating the tenants were obligated to pay the full amount directly to the landlord, (2) issuing three-day notices to pay rent or quit, and (3) issuing notices falsely stating the tenants owed past due rent in the amount of hundreds and sometimes thousands of dollars.

Plaintiffs allege against the landlord: (1) violation the RSO (L.A. Mun. Code, § 151.04) by charging the full rent despite reducing housing services; (2) retaliation against the class in violation of REAP (L.A. Mun. Code, § 162.00 et seq.) by demanding every tenant pay rent that exceeded the reduced amounts, issuing three-day notices to pay rent or quit, and demanding tenants pay past-due rent directly to the landlord; (3-4) breach of the implied warranty of habitability and nuisance by reducing services and causing the property to be accepted into REAP; and (5) abuse of process. In addition to damages, plaintiff seek an injunction to abate the nuisance and the landlord's harassment.

4. *Plaintiffs' class certification motion*

a. *class and subclass definition*

The two named plaintiffs moved for certification of a class defined as follows: "All tenants of the Los Altos Apartments, located at 4121 Wilshire Blvd., Los Angeles, CA 90010, during any part of the time period of January 22, 2005 to the present."

Plaintiffs' proposed subclass would consist of "Any class member who received any of the following notices: (1) a three-day notice to pay rent or quit on or about April 12, 2007; (2) a notice dated April 16, 2007 stating that the tenant was obligated to 'pay your full rent directly to the landlord;' or (3) a notice in late June, 2007 stating that the tenant owed a past due amount, without an explanation as to what the overdue amount referred."

The certification motion defined the term " 'tenant' " in the class and subclass, based on the RSO (L.A. Mun. Code, § 151.02). The trial court proposed a revision to plaintiffs' definition to include, rental payments accepted by the landlord. It reasoned that case law recognizes as tenants, not just those who were parties to leases or subleases, but also those who were subtenants whose rental payments were accepted by a tenant. The final proposed iteration read: "The term 'tenant' in the Class and Subclass means any tenant, lessee, or occupant under a written lease or rental agreement, or any tenant, subtenant, sublessee or other person entitled to use or occupy a rental unit and who submitted one or more rental payments that were accepted by the Landlord."

Plaintiffs emphasized that the class was ascertainable. The landlord provided the names, dates of occupancy, and last known addresses of 132 tenants who signed leases. Thus, identifying the tenants who overpaid rent when the property was in REAP could be accomplished by comparing the landlord's records with the City's orders, plaintiffs argued. In fact, defendants had already identified many of the class and subclass members, plaintiffs observed.

b. *Common questions of law and fact*

Plaintiffs averred that the class and subclass shared a community of interest because, among other things, common questions of law and fact predominated. Plaintiffs asserted their complaint's five causes of action arose from a single set of four common questions: "(1) whether severe Code violations, as cited by the LAHD, affecting the whole building existed at Los Altos from May 2006 through March 2007, and if so, whether Plaintiffs are entitled to recover partial refunds of rent under Plaintiffs' legal theories; (2) whether, under the circumstances of the Property being placed in REAP, the Landlord wrongfully demanded, collected or retained more than 50% of rent from the tenants; (3) whether the uniform three-day notices to pay rent or quit and other uniform notices demanding more than the reduced amount of rent from the tenants when the Property was in REAP constituted retaliation; and (4) whether the Landlord has failed to adequately maintain the elevator, security, garbage, and other housing services at the Los Altos during the class period."

6

Many of the defects involved code violations or habitability issues in individual apartments. On appeal, plaintiffs declare they are not challenging the trial court's order denying certification of a class for defects in individual units. Rather, plaintiffs seek review of the trial court's denial of certification of a class affected by defects in the common areas only.

As common evidence of substandard conditions in the common areas, plaintiffs pointed to testimony from the LAHD's housing inspectors, the LAHD inspection reports and work logs reflecting the 2006-2007 violations, the landlord's maintenance records and past due trash bills, testimony from percipient witnesses, and photos. Attached to the certification motion was a list the landlord gave LAHD of over 60 tenants who lived at Los Altos Apartments when the building was referred to REAP, along with the tenants' then-current, non-REAP rents. Also included with the motion were the landlord's notice to "All Tenants" demanding full rent while the building was in REAP, which the building manager testified in deposition was distributed to every tenant and posted in the common areas.

5. *Opposition to the class certification motion*

Defendants' opposition first raised questions about plaintiffs' ability to demonstrate an ascertainable class. Defendants argued that, as defined by plaintiffs, membership in the class "would require a person by person inquiry and evaluation of individual facts." For example, Unit 307 was leased to one person, whereas named plaintiff Aaronson occupied it, necessitating individual inquiry of the facts giving rise to the occupancy to determine class membership. Referring to the named plaintiffs, defendants asserted that Aaronson lacked standing and was an inadequate class representative as she never signed a lease agreement and she paid her rent directly to the lessee of Unit 307 until August 2007, after the property was removed from REAP. Also, Aaronson testified that while the property was in REAP, she never paid more than 50 percent rent. Hendleman was an inadequate representative because the trial court had already ruled Hendleman's claims in the second cause of action were barred by the statute of limitations.

7

Defendants also argued that individualized issues predominated defeating commonality. Evidence of retaliation and harassment raised individual issues about the circumstances of the communications between the landlord and each tenant and whether a tenant felt harassed and their individual reactions to rent demands, defendants averred. As for defects of the property, individual evidentiary issues existed about whether any of the alleged conditions interfered with each tenant's use of the services, how long the conditions affected each tenant, the type of harm suffered, the seriousness of the harm, and individual issues of causation. Defendants also argued that the LAHD cited many Code violations that were caused by tenants.[2]

Finally, defendants' opposition to the certification motion urged that class action is not a superior method to other litigation approaches.

6. *The trial court's ruling*

The trial court requested supplemental briefing on the class definition explained above, and about whether, as the result of the outcome of defendants' lawsuit against the City of Los Angeles, defendants are collaterally estopped from arguing that alleged habitability problems were caused by class members. After further briefing and argument, the trial court denied plaintiffs' class certification motion. The court ruled the class was not ascertainable, individual questions of fact and law predominated, collateral estoppel did not bar defendants from raising the tenant misconduct defense, and class action was not a superior method of litigation. Plaintiffs filed their timely appeal.

DISCUSSION

1. *Principles of class certification*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party

---

**2** To refute the named plaintiffs' habitability claims, defendants submitted declarations executed in 2010 and 2011 from 40 tenants averring that, in the particular declarant's opinion, there was no problem with the enumerated defects. The trial court did not mention these declarations in its ruling on the certification motion.

8

seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members [citations]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326), and "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

As " 'trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 326.) Accordingly, "in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436) and "ignore any unexpressed grounds that might support denial." (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 844.) "We may not reverse, however, simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order. [Citation.]" (*Ibid.*)

2. *Commonality of law and fact*

The " ' "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' [Citations.]" (*Brinker, supra,* 53 Cal.4th at p. 1021.) The "[p]laintiffs [have the] burden to establish the requisite community of interest and that '. . . questions of law or fact common to the class predominate over the questions affecting the individual members.' [Citation.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.) " 'The ultimate question in every case of this type is whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication,

9

are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Id*. at pp. 1104-1105.) Thus, "[p]resented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Brinker*, *supra*, at p. 1025.) "Proof of most of the important issues as to the named plaintiffs" must "supply the proof as to all" members of the class. (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 815.)

Although on review we assume all causes of action have merit, " 'issues affecting the merits of a case may be enmeshed with class action requirements . . . .' [Citations.] When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them. [Citations.] The rule is that a court may 'consider[ ] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.' [Citations.]" (*Brinker, supra,* 53 Cal.4th at pp. 1023-1024.) More specifically, "whether an element may be established collectively or only individually, plaintiff by plaintiff, can turn on the precise nature of the element and require resolution of disputed legal or factual issues affecting the merits. For example, whether reliance or a breach of duty can be demonstrated collectively or poses insuperable problems of individualized proof may be determinable only after closer inspection of the nature of the reliance required or duty owed and, in some instances, resolution of legal or factual disputes going directly to the merits. [Citations.]" (*Id*. at p. 1024.)

"Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

With these rules in mind, we turn to the trial court's ruling denying class certification.

10

a. *The third cause of action:  The trial court did not err in ruling the claim for breach of the implied warranty of habitability is not amenable to common proof.*

A warranty of habitability is implied in residential leases in California.  (*Green v. Superior Court* (1974) 10 Cal.3d 616, 629.)  "In most cases substantial compliance with those applicable building and housing code standards which *materially* affect health and safety will suffice to meet the landlord's obligations under the common law implied warranty of habitability."  (*Id*. at p. 637, italics added.)

However, the mere "existence of a prohibited (uninhabitable) condition or other noncompliance with applicable code standards does not *necessarily* constitute a *breach* of the warranty of habitability."  (Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2012) § 3:39, p. 3-13, citing *Green v. Superior Court*, *supra*, 10 Cal.3d at pp. 637-638.)  "Whether the defect or code noncompliance is 'substantial' (and thus a cognizable breach) or 'de minimis' (no actionable breach) is determined on a case-by-case basis."  (Friedman et al., *supra*, § 3:40, p. 3-13.)  "In considering the materiality of an alleged breach, both the seriousness of the claimed defect and the length of time for which it persists are relevant factors.  Minor housing code violations standing alone which do not affect habitability must be considered *de minimis* and will not entitle the tenant to reduction in rent; and likewise, the violation must be relevant and affect the . . . common areas which [the tenant] uses."  (*Hinson v. Delis* (1972) 26 Cal.App.3d 62, 70, disapproved on other grounds by *Knight v. Hallsthammar* (1981) 29 Cal.3d 46, 55, fn. 7.)  Stated otherwise, whether a particular defect or violation of a housing code constitutes a breach of the implied warranty of habitability depends on the severity and duration of the defect or violation.  Breach is a rebuttable presumption affecting the burden of producing evidence.   (Friedman et al., *supra*, §§ 3:46 to 3:47, pp. 3-14 to 3-15.)

Plaintiffs do not quarrel with the proposition that whether a defect or code violation is sufficiently substantial to constitute an actionable breach is determined on a case by case basis.  They argue instead that a cause of action for breach of the warranty of habitability can be brought with evidence common to all tenants in a building.

11

Plaintiffs claim their common evidence for their liability-only class includes the LAHD inspection reports, work logs, past due trash bills, and plaintiffs' testimony and photographs. The LAHD inspector declared that the fire-safety and weatherproofing violations "affect the entire building." Plaintiffs note that this evidence is how any individual tenant would prove the landlord breached the warranty of habitability as to them. (Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra*, § 3:63 to 3:65, pp. 3-19 to 3-20.)[3] It is important here to make the distinction between code violations and service reductions. The common-area code violations cited by the LAHD concerned weatherproofing and fire exit defects that triggered REAP, but not the alleged service reductions, i.e., trash, elevator, and security. In our view, the code violations and service reduction defects raise individualized problems of proof that go to the heart of the merits and defeat commonality.

Community of interest "means 'each member must not be required to individually litigate numerous and substantial questions to determine his [or her] *right to recover* following the class judgment." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913-914, italics added.) Although plaintiffs' proffered evidence raises a rebuttable presumption that there are code violations and service reductions having an impact on the common areas of the building, plaintiffs must nonetheless demonstrate that each defect is sufficiently substantial to be actionable. (Friedman et al., Cal. Practice

---

[3]    The parties argue at length about defendants' affirmative defense that tenant misconduct caused the habitability problems. Among the reasons for defendants' opposition to class certification was the necessity of individualized evidence of particular tenants' misconduct. Plaintiffs argued that certification cannot be defeated by a defense. To the contrary, "[a] liability-only class certification may be denied . . . where there are defenses that require *individualized inquiry* into each class member's claim." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) § 14:103.6, p. 14-74, citing *In re Ford Motor Co. Ignition Switch Products* (D.N.J. 1997) 174 F.R.D. 332, 347.) Plaintiffs also argued that defendants were collaterally estopped from raising the question of tenant misconduct because they failed to raise the defense when they could have in an appeal before the LAHD. Because we agree with the trial court that class certification is defeated by the predominance of individual issues of liability, we need not address the collateral estoppel question.

Guide: Landlord-Tenant, *supra*, § 3:40, p. 3-13.)  While the trial court recognized that the fire safety defects affected everyone in the building and three LAHD inspectors declared that the cited violations affected every apartment in the building, the evidence supports the trial court's finding that the alleged code violations and service reductions do not affect all of the tenants in the same manner or to the same degree.  (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 815.)  As defendants demonstrated, some of the tenants have not noticed and are not affected by some of the alleged code violations and service reductions.  The differences among the two named plaintiffs alone about the *effect* of the alleged code violations and reductions in service reveal the need for individual proof of impact on each plaintiff.  For example, Hendleman and Aaronson report different problems with the trash bins and by the condition of the elevator.  Some tenants do not use the elevator and so they would not be harmed by its intermittent failures.  Security was not promised under the lease and the manner and extent to which a tenant is disturbed by defects in security differs.  Weatherproofing problems may affect one tenant and "never be seen by those who live in another area of the building."  Whether and how each tenant is affected by the alleged code violations and service reductions, and the extent and type of harm suffered, so as to establish that these conditions are "substantial" and thus actionable, is not subject to common proof.

Plaintiffs insist that they need not demonstrate *the effect* that the code violations have on each tenant because, citing *Knight v. Hallsthammar, supra,* 29 Cal.3d at page 54, they argue tenants need not have been aware that a code violation existed for a landlord to have breached the implied warranty of habitability.  *Knight* stated "the fact that a tenant was or was not aware of specific defects is not determinative of the *duty* of a landlord to maintain premises which are habitable."  (*Ibid*., italics added.)  But, the implied warranty of habitability "does not support an action for strict liability." (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1191, 1206.)  The question here is not whether plaintiffs can by common proof demonstrate a breach of the duty, but whether they can demonstrate a breach *that is sufficiently substantial to be actionable*. (*Green v. Superior Court*, *supra*, 10 Cal.3d at pp. 637-638.)  Certification of the class for

13

this cause of action would necessarily include tenants who are unaware of and do not experience a service reduction, and would thus make the landlord strictly liable for the mere existence of a defect. This is not simply a question of calculating damages, as plaintiffs insist. The individual issues pervading this cause of action go to the question of each tenant's *entitlement* to recover. "[A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his case." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.) Here, evidence of numerous, substantial, and individualized facts would be necessary for each tenant to establish his or her individual right to recover thus rendering class litigation inappropriate. (*Wilens v. TD Waterhouse Group, Inc*. (2003) 120 Cal.App.4th 746, 756; see also *Basurco v. 2st Century Ins. Co*. (2003) 108 Cal.App.4th 110, 119 [no certification where "the existence of [earthquake] damage, the cause of damage, and the extent of damage would have to be determined on a case-by-case basis"].) Put otherwise, for the same reason that, as plaintiffs concede, defects in an individual apartment are not amenable to common proof, defects that substantially impinge on only some tenants in the building require individualized evidence, particularly where there is demonstrated disagreement between the named plaintiffs.[4]

In sum, the record contains substantial evidence to support the trial court's findings that individual issues predominate and the court employed proper criteria and legal assumptions in ruling that plaintiffs have not demonstrated the requisite commonality with respect to the third cause of action.

---

[4]    On appeal, plaintiffs assert they are only seeking damages in the third cause of action under a contract theory, i.e., the difference between the rent paid and the rent that would have been reasonable (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 627, p. 734), under which individualized "damages for discomfort and annoyance are not recoverable." (*Ibid.*) However, as we conclude individual issues of liability predominate, we need not reach the question of damages.

14

b. *The first cause of action:  the trial court did not abuse its discretion in denying certification of the claim of illegal rent increases under the RSO for lack of commonality.*

In the first cause of action under the RSO, plaintiffs allege that the landlord reduced services affecting the entire property without correspondingly reducing rent, which conduct constitutes a rent increase under the RSO (L.A. Mun. Code, § 151.02). They also allege that between February 2007 and June 2007, the property was in REAP with a corresponding 50 percent reduction in rent.  Nonetheless, plaintiffs allege, defendants demanded, accepted, or retained more than the "Maximum Adjusted Rent from all of the tenants" in violation of Los Angeles Municipal Code section 151.04.  That section reads, "It shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to this chapter or regulation or orders adopted pursuant to this chapter."  (L.A. Mun. Code, § 151.04(A).)  The RSO defines "Maximum Adjusted Rent" as maximum rent "less any rent reductions . . . imposed pursuant to Section 162.00 et seq. [REAP]."  (L.A. Mun. Code, § 151.02.)  Plaintiffs rely on this section to argue the landlord violated the RSO for by demanding, accepting, or retaining, more than the maximum adjusted rent as determined by the LAHD, which by definition involved reductions imposed pursuant to REAP.

The trial court found that by alleging reduced housing services, plaintiffs had injected the same individualized habitability questions raised in the third cause of action. We agree.  The RSO defines housing services as "Services connected with the use or occupancy of a rental unit including, but not limited to, utilities (including light, heat, water and telephone) . . . the provision of elevator service, laundry facilities and privileges, common recreational facilities, janitor service, resident manager, refuse removal, furnishings, food service, parking and any other benefits privileges or facilities."  (L.A. Mun. Code, § 151.02.)  As noted, defendants presented evidence that many tenants did not contract for the parking garage and its security, the two named plaintiffs report different reactions to the condition of the trash bins, and many tenants never use the elevator.  Thus, as with the third cause of action for breach of the implied warranty of habitability, individual factual issues predominate.

15

c. *The second cause of action: the trial court did not abuse its discretion by denying certification of plaintiffs' retaliation claim for lack of commonality and lack of an adequate representative.*

In the second cause of action, plaintiffs allege that after the property was placed in REAP, the landlord "harassed and retaliated against the tenants by demanding rent exceeding the reduced amounts," by issuing notices falsely stating that the tenants were obligated to pay the full rent amount directly to the landlord, by issuing three-day notices to pay rent or quit, or by issuing notices falsely stating that the tenants owed the landlord hundreds and sometimes thousands of dollars in past due rent.

The trial court denied certification of a class for the second cause of action because the "REAP program gives tenants the choice of paying full or reduced rent to the landlord or to the City" and defendants had shown that "some tenants voluntarily chose to continue paying their full rent to the landlord."

Plaintiffs contend the trial court's ruling denying class certification was based on an erroneous legal assumption because, they argue, a landlord of property in REAP "cannot *accept* more than the reduced rent." For this proposition, plaintiffs cite Los Angeles Municipal Code section 151.04(A), which is a provision of the *RSO*. As noted, section 151.04 states: "It shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to *this chapter* or regulation or orders adopted pursuant to *this chapter*." (L.A. Mun. Code, § 151.04(A), italics added.) While an *RSO* tenant may not acquiesce to paying more than the maximum adjusted rent permitted (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1372 ["a landlord cannot, even with the tenant's acquiescence or by mutual agreement, circumvent that which the law prohibits" in RSO section 151.04]), the RSO is contained in an entirely different *chapter* of the Municipal Code -- Chapter XV -- than REAP, which is found in Chapter XVI. Section 151.04(A) of the Los Angeles Municipal Code is not authority for plaintiffs' contention that the trial court made an erroneous legal assumption in ruling that tenants have the option of paying the full amount of rent to the landlord *under REAP*.

16

Plaintiffs argue it stands to reason that the landlord of REAP property should be precluded from demanding the full amount of rent lest landlords try to intimidate tenants. However, the City, who enacted the RSO Chapter XV, knew how to forbid landlords from demanding, accepting, or retaining rent in excess of the *maximum adjusted rent* (L.A. Mun. Code, § 151.04), but noticeably did not enact a similar provision in REAP, Chapter XVI. To be sure, REAP does contain tenant protections. Landlords may not bring unlawful detainer actions on the basis of nonpayment of rent if the tenant is paying rent into the escrow account. (L.A. Mun. Code, § 162.09(A).) A landlord "who retaliates against a tenant for the tenant's . . . exercise of rights or duties under this article shall be liable in a civil action for damages." (L.A. Mun. Code, § 162.09(C).) And, landlords "shall not increase *the rent*" for the current or subsequent tenants during the REAP period and for a certain time thereafter. (L.A. Mun. Code, § 162.09(B), italics added.) Yet, this last prohibition against increasing *the rent*, does not use the phrase "maximum adjusted rent," as defined in section 151.02 and as referred to by section 151.04. Plaintiffs have not cited us to a provision of REAP that *precludes landlords from accepting and tenants from paying* the full amount of rent notwithstanding his or her apartment is in REAP.

*Rich v. Schwab* (1984) 162 Cal.App.3d 739, does not aid plaintiffs. There, the tenants sued their landlord for increasing rents to a mobile home park without giving 90 days' notice in violation of Civil Code section 798.30 for the purpose of retaliating against the tenants for organizing and petitioning the city for rent control under Civil Code section 1942.5. (*Rich v. Schwab,* at p. 742.) Certification of a class of tenants was proper there because of the predominance of common questions of law and fact: The rent increase notice to all tenants in *Rich* violated Civil Code section 798.30. (*Rich v. Schwab,* at pp. 744-745.) Here, however, REAP does not preclude tenants from paying the full amount of rent to the landlord. Therefore, individual issues predominate about who paid the full amount voluntarily and who did so because they were intimidated.

More important, however, the trial court identified another obstacle to certification of the second cause of action, namely a problem of adequacy of representation. " ' "The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member

17

of the class he claims to represent." ' " (*Caro v. Procter & Gamble Co*. (1993) 18 Cal.App.4th 644, 663.)  Hendleman's claim under the second cause of action is barred by the statute of limitations; and Aaronson was not a tenant between March and June 2007. As defined, a tenant is "any tenant, lessee, or occupant under a written lease or rental agreement, or any tenant, subtenant, sublessee or other person entitled to use or occupy a rental unit and who submitted one or more rental payments that were accepted by the Landlord."  Aaronson did not live in her apartment under a lease and she paid rent directly to the tenant of that apartment until *August 2007*, after the property was removed from REAP and beyond the proposed subclass period.  Thus, there is no representative for the second cause of action.  There was no error in denying the certification motion as to the second cause of action.

d.  *The fourth cause of action:  The trial court did not abuse its discretion in denying certification of the nuisance cause of action for lack of commonality.*

Plaintiffs alleged the landlord's harassment of tenants by issuing notices demanding rent, "as well as the defective conditions of the Property . . . constitute a nuisance" in that they are injurious to tenants' health and comfortable enjoyment of the property.  In denying plaintiffs' certification motion, the trial court ruled that individual factual and legal issues predominate.  We agree.

"Code of Civil Procedure section 731 specifically authorizes an action by any person whose property is injuriously affected, or whose enjoyment of property is lessened by a nuisance, as the same is defined in Civil Code section 3479 (see also 47 Cal.Jur.3d, Nuisance, § 59, p. 299).  Civil Code section 3479 defines a nuisance as '[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . .' " (*Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 919.)  "The statutory definition of nuisance appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property." (*Ibid*.) " 'It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the

18

members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance.' " (*Id.* at p. 920.) The nuisance plaintiff must show "*a substantial interference with the use and enjoyment of the premises not merely de minimis interference.*" (*Ibid.*, italics added)

*City of San Jose v. Superior Court*, *supra*, 12 Cal.3d 447 involved the certification of a class of nuisance plaintiffs. There, the plaintiffs, who lived in the flight pattern of the San Jose airport, sued the city seeking recovery for diminution in the market value of their properties caused by airplane noise, vapor, dust, and vibration. (*Id.* at p. 453.) The Supreme Court vacated the order certifying a class, explaining: "the present action for nuisance and inverse condemnation is predicated on facts peculiar to each prospective plaintiff. *An approaching or departing aircraft may or may not give rise to actionable nuisance or inverse condemnation depending on a myriad of individualized evidentiary factors.* While landing or departure may be a fact common to all, *liability can be established only after extensive examination of the circumstances surrounding each party.* Development, use, topography, zoning, physical condition, and relative location are among the many important criteria to be considered. No one factor, not even noise level, will be determinative as to all parcels." (*Id.* at pp. 460-461, italics added, fn. omitted.)

Likewise here, as explained with respect to the third cause of action for breach of the implied warranty of habitability, even if the *existence* of the code violations and service reductions in the common areas of the property were subject to common proof, whether a tenant has suffered discomfort and annoyance from an intermittently operating elevator, defects in the garage security, trash, inoperable fire-exit door, or weatherproofing problems, or was intimidated by the landlord depends on facts specific to each particular tenant. Whether the nuisance is actionable can only be established after examination of the circumstances of each tenant, such as the location of each tenant's unit, whether and how much a particular tenant used the specific service or was affected

19

by its reduction, or felt harassed by the landlord's demands for rent. (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 459.)

Plaintiffs argue on appeal that the trial court omitted to discuss the possibility of certifying a remedy class for the prayer for injunctive relief. However, we must "ignore any unexpressed grounds" for denial of certification and need not reverse simply because the court failed to address the injunction issue where the court's stated reason was sufficient to justify the denial of the certification motion as to the fourth cause of action for nuisance. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.*, *supra*, 178 Cal.App.4th at p. 844.)

e. *The fifth cause of action: the trial court did not abuse its discretion in denying plaintiffs' abuse of process claim for lack of numerosity.*

Plaintiffs' fifth cause of action for abuse of process alleges that on April 12, 2007, the landlord issued three-day notices to pay rent or to quit to "*several* tenants residing at the Property" without intending to evict the recipients and without contemplating litigation, and that "*many* tenants to whom three-day notices were issued" paid more than the reduced rent amount imposed by the LAHD. (Italics added.) Certification of a class for this cause of action was inappropriate, according to the trial court, because among other things, the class definition proposed by the plaintiffs, all tenants from January 2005 to September 2010, is far more expansive than the April 12, 2007 date. Plaintiffs offered to redefine the class to include a subclass of tenants who received notices in April and June 2007. The trial court properly concluded that this would restructure the class configuration as proposed in plaintiffs' motion for certification and plaintiffs had not justified the proposed subclass in terms of numerosity, ascertainability, commonality, and adequacy of representation.

The record supports the trial court's ruling. For example, plaintiffs assert that 18 members of the class received three-day notices and of those, a smaller amount, "many," paid more than the REAP imposed rent. "For a class to be considered ascertainable, its members must have a plausible cause of action against the defendant. [Citation.] If multiple plaintiffs fail to meet this elementary standard, no ascertainable class exists, and

20

a class action may not be maintained.  [Citation.]"  (*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1294-1295, disapproved on another point in *Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th at pp. 442-443.)

      f.  *Amendment*

Both on appeal and during oral argument in the trial court, plaintiffs made repeated offers to redefine the class or subclass, or to certify a class with respect to certain allegations but not others, or damages only.[5]  Plaintiffs are essentially asking this court not to act as a court of review, but to rule on the class certification anew, based on representations made after plaintiffs filed their motion for certification.  That is not the function of the appellate court.  (*Sav–On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th 319, 326; *Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th at pp. 435–436; *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, *supra*, 178 Cal.App.4th at p. 844.)  Plaintiffs seeking to certify a class have the burden to demonstrate *to the trial court* ascertainability, commonality, and adequacy of the class representatives.  (*Sav–On Drug Stores, Inc. v. Superior Court, supra,* at p. 326.)  Such showing is not made in argument or by adjusting, amending, or jettisoning various allegations or prayers in the complaint on the fly.  Plaintiffs proposed so many amendments that they are effectively redefining their entire class action.  If plaintiffs would like to reconsider the shape of their class and the class allegations, they must do so in the first instance in the trial court.

To summarize, the trial court's reasoning was correct and it did not use improper criteria or erroneous legal assumptions.  As the result of our conclusion that the court did not abuse its discretion in denying certification of all five of plaintiffs' causes of action

---

[5]     For example, plaintiffs' certification motion seeks to include a class of tenants "during any part of the time period of January 22, 2005 to the present," i.e., September 2010.  However, both below and on appeal, plaintiffs repeatedly assert that they are only seeking damages for violations that the landlord did not timely correct for *a 10 month period between May 2006 and March 2007* causing acceptance into REAP.  Plaintiffs argue on appeal that the class could be redefined or a subclass could be certified around the dates.  Plaintiffs have yet to explain this discrepancy in dates, although the trial court raised it in its ruling denying certification.

on the basis that individual issues predominate, we need not address plaintiffs' other challenges to the trial court's ruling. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.*, *supra*, 178 Cal.App.4th at p. 844.)

## DISPOSITION

The order is affirmed. Respondents to recover costs on appeal.


ALDRICH, J.


We concur:


CROSKEY, Acting P. J.


KITCHING, J.

Filed 8/20/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID HENDLEMAN et al., | B235404 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC406059) |
| v. | |
| LOS ALTOS APARTMENTS, L.P., et al., | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

The Los Altos Apartments, L.P., et al. has requested that our opinion, filed on July 22, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is granted. The opinion is ordered published in the Official Reports.

[There is no change in the Judgment.]